UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT NEVADA

✓ FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

2007 MAR -1 P 2: 26

| | |
|---|---|
| SAMUEL R. BYRD<br>PLAINTIFF, Pro-se<br>-VERSUS-<br><br>DONALD DEMARAH, et al.;<br>JohnDoes 1-10 Defendants. | THE HONORABLE JUDGE: ?<br>CASE NO. ?<br>CIVIL LAWSUIT UNDER ?<br>U.S.C. § ?<br>COMPLAINT FOR DAMAGES $45million<br>DEMAND FOR TRIAL BY JURY |
| 2:07-cv-00267-RCJ-RJJ | BLACKMAIL - EXTORTION<br>FALSE ARREST OF PLAINTIFF |

## THE STATEMENT OF FACTS AND DECLARATION

I, SAMUEL R. BYRD, Am the plaintiff named in the above cause of action, in the above entitled court, do hereby state the following; Seeks damages in the amount of, Fourty Five Million dollars, ($45 million);

1.) I am the President and sole shareholder of, MILON MUSYCK, INC., A Corporation licensed in the State of Nevada, County of Clark, and that the type of business that I conduct, consist of, Concert Music Productions, where there is a paid admission for any persons that wishes to attend the performances of any show (Live Entertainment) in which, Milon Musyck, INC., may be advertising/Promoting, for public attendance);

2) I have been in the music field for, approximately, 37 years, of my adult life, and, still in the same business to this date;

When ever there is an event that is promoted by, Milon Musyck, Inc, I e the responsibilities of, Making certain that, all rules of the laws in

/11

the course of my business is, carried out, without any delay, or any insufficiencies of the same;

4) I am a tax payer for any employee in which there is a W-2 issued, and taxes withheld and, a tax reporter of income paid to any individual that may be paid in cash, or in better terms, 1099 Notification;

5) That during the month of August, 2006, I had the occassion to entering into a business agreement with one, Donald Demarah, of 42 N. West Ave., Burbonnais, Illinois, which consisted of the purchase of a home built by the defendant named in this action, Donald Demarah and, his investment into my Music Corporation (short-term) for a music production that was planned for, the Summer of 2007;

6) After having several bad experiences with, Mr. Demarah's dishonest business dealings, and several telephonic voice mails of, Blackmail and Extortion, I decided that it was time to sever our ties, and go our seperate ways;

7) Since dealing with, Donald Demarah, and after paying him in Cash $46,700, U.S. currency, which consisted of, 467x100 Dollar bills, that was done as a 1099, no taxes withheld, and obtaining his signature on the same, Donald Demarah advised me to, not report the income to the Internal Revenue Services, and department of the Treasury on, October 18, 2006, as evidenced by, the signed executed document on the Milon Musyck, Inc., Payroll Adjustment Form, one time pay, State of Nevada Corporation, No Taxes Withheld, (see inclosed Receipted Proof);

8) Mr. Demarah, after being advised that, I would be reporting the 1099 to the I.R.S., which is the duty of a corporation, went on and filed a false Police Report with several false allegations as stated on his voicemail threats,

(2)

causing the arrest of my person, and hold in custody; (see 66.N.E.2d.464,465; 24 P.979,980; 258.N.W.62,65; and 82.N.E.1039,1041. Also; Criminal Coercion in criminal statutes. See Model Penal Code § 212.5.

9) I did forward a color copy or original copy of the enclosed document to this complaint to, the office of the U.S. Dept. of the treasury and the I.R.S., Ogden, Utah, 84403, on October 26, 2007, or thereabout and on January 23, 2007 via U.S. mail from, L.V. Nevada, 89119, (signed receipt of 1099 cash pay to, Don Demarah, in the amount of Fourty Six thousand Seven hundred dollars, and 99¢nts dated, October 18, 2006, Fax confirmation of date and time, and signed on same date by the Defendant, Donald Demarah;

10) Donald Demarah did solicid me to hide other funds not reported to the Internal Revenue Services, over a Four Year Period, however, I made it very clear that, I was not interested. Total amount Donald Demarah stated he needed to hide was, Seven hundred thousand dollars, from several safe deposit boxes, in several of his banks, to include and not limited to a Federal Credit Union, Bourbonnais, Illinois, or surrounding area, Homestar Bank in Manteno, and Bourbonnais, Illinois, and from his business of, Donald Demarah Construction, Kankakee County Illinois, located at, 45 N. West ave., Bourbonnais, Illinois, 60914;

This plaintiff will be doing a supplemental claim as they develope, with the inclusion of, all the John does, not named.

I Declare that, the Foregoing is true and correct to the best of what I know to be true and correct under the laws of the U.S. of america.

x Samuel R Byrd
Samuel R. Byrd / Plaintiff
Pro-se

(3)

# DECLARATION

I Declare that, I am the plaintiff in the above action, in the above honorable Court, That I am without access to a copy machine for the necessary Copies, without their being in the hands of those whom are named in this action. For the safety and security of the plaintiff, I have drafted this complaint, by hand, without any law library, access to a law library, and have only had the use of, "Barrons Law Dictionary Fifth Edition, by Steven H. Gifis". That my Funds are limited, due to the unlawful Freezing of my assets, by the defendants and that I am and have been maliciously prosecuted, because I refused to act in concert with the defendant(s) Donald Demarah, in hiding the large payout to him from the Department of the Treasury, etc...

I caused the enclosed documents to be mailed to the above entitled court, by placing the same in an enclosed envelope, with the proper of postage necessary and placed it in a United States Postal Mailbox, at 3050 Justice Way, Kankakee, Illinois, 60901 on February 26, 2007, at the hour of ___9:00am___, express Certified - proof of delivery. Under the Law of the U.S.A., the foregoing is true and correct to the best of my belief of what I know to be true and correct, as stated,

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Samuel E. Byrd, Declarant

## "CASE LAW ON ISSUES"

FALSE ARREST unlawful arrest; unlawful restraint of another's personal liability or freedom of locomotion. 193 N.E. 2d 485, 489. <u>It may be a criminal offense and/or the basis of a civil action for damages.</u> (see False Imprisonment)

False Imprisonment as a tort, the unjustified detention of a person. The restraint must be total so that it amounts to an imprisonment; mere obstruction, stopping, or locking one out of his room, etc., is not enough. 219 F. 2d 622, 624. The total restraint may, however, be of any appreciable duration. 70 So. 734, 736. No physical force needs to be used so long as the victim reasonably believes that he is being restrained against his will. 145 S.W. 2d 312, 314 (False Imprisonment existed where a woman restrained in a store where her purse was wrongfully taken from her). The tort must be intentional, Restatement (Second), Torts §35; but no actual damages needs to be proved. 159 A. 2d 128, 131.

Where the restraint is imposed by virtue of purported legal authority and an arrest occurs, it will be <u>False arrest</u> resulting in a false imprisonment; the defendant need not be a police officer but merely assert improper legal authority to detain. 116 P. 234, 237 (Railroad Conductor).

As a Common Law misdemeanor it is the unlawful confinement of a person. This need not consist of wrongfully locking him in a jail, but comprehends "any unlawful exercise or show of force by which a person is compelled to remain where he does not wish to remain or to go where he does not wish to go." 172 N.E. 2d 380, 381-82. In many states, an unlawful knowing restraint which interferes substantially with a person's liberty gives rise to criminal liability. See Model Penal Code § 212.3.

<u>malicious arrest</u> the arresting of a person on a criminal charge without probable cause, or with Knowledge that the person did not commit the offense charged.

In that the plaintiff was subjected to the above, in actions caused by, the defendant(s) Donald Demarah, John Doe's, 1-10, the plaintiff prays for the relief in this court to file this action for damages, in the amount of Fourty Five million dollars ($45,000,000) and demands for a trial by Jury in the above entitled honorable court, or court of its proper venue, Pro-se, until further notice to the court.

*Samuel R. Byrd*
SAMUEL R. BYRD - Plaintiff/Pro-se

CERTIFIED MAIL ARTICLE #
7002-0510-0000-4233-9174
MAILED FROM: 89119
Via U.S. CERTIFIED #7002-0510-0000-9174

FOR INFO CALL:
1-212-518-0139
MS. DAVILA
FOR A.D.P. PAYMENT ADJUSTMENT
FORM; Signed by: Don Demarah
October 18, 2006

MILON MUSYCK, INC
1515 E. Tropicana Ave
Las Vegas, NV 89119
C/O Rogers & Rogers, Suite 610

Tuesday, Jan 23, 2007

DEMARAH PAID IN FULL ON 10/18/2006
SEVERED BUSINESS AGREEMENT. One-
TIME PAYOUT. 1099 EMPLOYEE # 9414
$46,700 - Cash. Color copy mailed 10/18/06
From MILON MUSYCK INC... DATA PROCESSING

DEPT OF THE TREASURY
INTERNAL REVENUE SERVICES
OGDEN, UTAH 84403

DEAR SIR/MADAM:

PLEASE NOTE that, the ENCLOSED WAGES WERE
PAID TO, DONALD DEMARAH, 42 N. WEST AVE., Bourbonnais, IL,
60914.

THERE IS NO 1099-R, HS, NO TAXES WERE WITHHELD
ON THE TOTAL PAY TO MR. DEMARAH, FROM MILON MUSYCK
INC. THIS PAYMENT WAS FOR, SEVERENCE OF BUSINESS
RELATIONS AGREEMENT, EIGHT MONTHS BEFORE MUSIC TOUR
GOT OFF OF GROUND. MR. DEMARAH DID RECEIVE
A TOTAL OF 467 ONE hundred dollar bills, FOR A TOTAL
OF $46,700, U.S. CURRENCY. 1099

ALERT NOTE: PLEASE KNOW that, I, SAMUEL R. BYRD,
PRESIDENT OF MILON MUSYCK, INC., WAS ASKED BY
DONALD DEMARAH, OF DEMARAH'S CONSTRUCTION CO, that
IS, AT SAME ADDRESS, LOCATION, BOURBONNAIS, ILLINOIS 60
914, NOT to REPORT THIS PAYMENT TO, the I.R.S.
See 26 U.S.C. §7206(2) §271.4

DEMARAH ADVISED
TAX FRAUD

AS YOU will NOTE, MY CORPORATION, MILON MUSYCK, INC.,
HAS ALWAYS REPORTED ALL TAXES FOR ALL PERSONS that
RECEIVED ANY MONEY, FROM MY CORP. (W-2) OR (1099)

NO PAYROLL 2005  VR/

Samuel R Byrd

PHOTO/FAX COPY FORWARDED
TO: U.S. DEPT OF TREASURY
"BYRD EVIDENCE"
OWNER OF, MILON MUSYCK, INC

mr. Ellen Hoarce: **Demarah, wants to hide this income.**
Please notify the I.R.S., of his attempt, "__A.S.A.P.__"
and Forward copy to same.



(Payroll Adjustment Form for Don Bemarah, dated 10-18-06, VOID, manual. Gross Pay $46,700.00, Net Pay $35,447.60, Cash Pay 10/18/06 $46,700.00. FICA 134,91.40 (?), Fed WT 7,13.00 (?), State 1,398.00 (?). Salary $46,700.00.)

BYRD EXHIBIT

FOR
U.S. TAX
U.S. DEPT OF TREASURY
NO 12-B

Mr. Byrd:  
Here is your proof to buy  
house. Demarah did not tell truth.

# COMMITMENT FOR TITLE INSURANCE

## Lawyers Title Insurance Corporation

### Schedule A

1. Effective Date: July 31, 2006 at 8:00 a.m.  Commitment No. ST42312

2. Policy or policies to be issued:

   (a) ALTA Owner's Policy 1992   Amount $307,000.00  
   Proposed Insured:

   Byrd Family Revocable Living Trust Agreement

   
   REVISED 8-3-06

   (b) ALTA Loan Policy 1992   Amount $TO COME  
   Proposed Insured:

   First National Mortgage Services

3. Title to the fee simple estate or interest in the land described or referred to in this Commitment is at the effective date hereof vested in:

   HomeStar Bank, as Trustee under provisions of Trust Agreement dated March 2, 2005 and known as Trust #1173 as to Tract I  
   Don Demarah as to Tract II

4. The land referred to in this Commitment is described as follows:

   Tract I: Lot 87, Virginia Grove Fourth Addition, being a Subdivision of part of the Northwest Quarter of Section 18, Township 31 North, Range 12 East of the Third Principal Meridian, in Kankakee County, Illinois.

   Tract II: Lot 86, Virginia Grove Fourth Addition, being a Subdivision of part of the Northwest Quarter of Section 18, Township 31 North, Range 12 East of the Third Principal Meridian, in Kankakee County, Illinois.

Standard Title Guaranty Company  
215 South Schuyler Avenue,  
Kankakee, IL 60901  
(815) 933-5100

By: _____  
Authorized Officer of Agent

This commitment is invalid unless the insuring provisions and Schedules A and B are attached.

Department of Treasury report from BATF
Federal Exhibits #8


# COMMITMENT FOR TITLE INSURANCE

Lawyers Title Insurance Corporation

Schedule B - Part I

(Requirements)

Commitment No. ST42312

The following are the requirements to be complied with:

 1. Pay the agreed amounts for the interest in the land and/or mortgage to be insured.

2. Documents satisfactory to us creating the interest in the land and/or mortgage to be insured must be signed, delivered and recorded:

   a. Proper Deed from HomeStar Bank, as Trustee under provisions of Trust Agreement dated March 2, 2005 and known as Trust #1173 vesting fee simple title in Byrd Family Revocable Living Trust Agreement.

   b. Warranty Deed from Don Demorah and spouse if any vesting fee simple title in Byrd Family Revocable Living Trust Agreement.

   c. Mortgage from Byrd Family Revocable Living Trust Agreement to First National Mortgage Services securing the mortgage amount.

3. You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

4. Payment and release of record of construction mortgage from HomeStar Bank, as Trustee under provisions of Trust Agreement dated March 2, 2005 and known as Trust #1173 to HomeStar Bank dated August 9, 2005, recorded August 10, 2005 as document #2005-17293 to secure $166,600.00. (Tract I)

5. Completion and execution of the ALTA EXTENDED COVERAGE POLICY STATEMENT by all parties to the transaction. (ATTACHED)

 6. Receipt of satisfactory affidavits from the owner and general contractor, if any, evidencing completion of the improvements and payment of all bills incurred in the erection thereof, if the statutory period for filing mechanics' and materialmen's liens has not expired. Proper waivers or releases of liens must be obtained from the holders of any unsatisfied claims disclosed by said affidavits. These exhibits should be provided for examination prior to final settlement, and this commitment is subject to the sufficiency thereof.

This commitment is invalid unless the insuring provisions and Schedules A and B are attached.

Standard Title Guaranty Company, 215 South Schuyler Avenue, Kankakee, IL 60901

Department of Treasury copy
from Byrd
Federal Exhibit #4



# COMMITMENT FOR TITLE INSURANCE

## Lawyers Title Insurance Corporation

### Schedule B - Part II
(Exceptions)

Commitment No. ST42312

Schedule B of the policy or policies to be issued will contain the exceptions to the following matters unless the same are disposed of to the satisfaction of the Company.

1. Defects, liens, encumbrances, adverse claims, or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2. Encroachments, overlaps, boundary disputes, shortage in area, or any other matters which would be disclosed by an accurate survey and inspection of the premises.

3. Rights or claims of parties in possession not shown by the public records.

4. Easements or claims of easements not shown by the public records.

5. Any lien, or right to a lien for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

6. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public record. Proceedings by a public agency which may result in taxes or assessments, or notice of such proceedings, whether or not shown by the records of such agency or the public record.

7. NOTE: The records of the Supervisor of Assessments indicate that the Tract 1 is currently being assessed for real estate taxes under tax #17-09-18-102-087.

   NOTE: The records of the Supervisor of Assessments indicate that Tract II is currently being assessed for real estate taxes under tax #17-09-18-102-086.

8. Taxes for 2005 and subsequent years.

9. NOTE: 2005 taxes are $909.54. The first installment was paid on June 26, 2006. The second installment is not yet paid. (#17-09-18-102-087)

   NOTE: 2005 taxes are $11.48. The first installment was paid on June 26, 2006. The second installment is not yet paid. (#17-09-18-102-086)

10. Rights of the public, State of Illinois, and the municipality in and to that part of the property in question taken or used for road purposes together with utility rights therein.

11. Rights of way for drainage ditches, feeders and laterals, if any.

continued

This commitment is invalid unless the insuring provisions and Schedules A and B are attached.

Standard Title Guaranty Company, 215 South Schuyler Avenue, Kankakee, IL 60901

## SCHEDULE B-Part II - continued

Commitment No. ST42312

12. 25 foot Building Setback Line along the West line of property as shown on plat of subdivision. (Lot 87)

13. 12 foot Sanitary Sewer Easement over the West line of property as shown on plat of subdivision. (Lot 87)

14. 22 foot Public Utility Easement over the East line of property as shown on plat of subdivision. (Lot 87)

15. 25 foot Building Setback Line along the West line of property as shown on plat of subdivision. (Lot 86)

16. 12 foot Sanitary Sewer Easement over the West line of property as shown on plat of subdivision. (Lot 86)

17. 6 foot Public Utility Easement over the South line of property as shown on plat of subdivision. (Lot 86)

18. 22 foot Public Utility Easement over the East line of property as shown on plat of subdivision. (Lot 86)

19. A perpetual easement on the Plat of Virginia Grove Subdivision- Phase 3 and the plat of survey of Virginia Grove Fourth Addition is hereby granted to the Village of Bourbonnais, Municipal Corporation of Illinois, its successors and assigns, for the full and free right and authority to install, construct, and otherwise establish, relocate, remove, renew, replace, operate, inspect and maintain water mains, fire hydrants valves and water service facilities, sanitary sewer pipes, manholes and sewer connections, storm sewer pipes, manholes, inlets, storm water detention and storm water services connections, electronic transmission and distribution wires and cables, community antenna television systems and such other appurtenances and facilities as may be necessary or conveniently related to said water mains, sanitary sewer pipes, storm sewer pipes, storm water detention, electronic transmission and distribution wires and cables, community antenna television system, in, on, upon, over, through, across, and under all of that real estate hereon described and designated as within public utility and drainage easements, said easements being designated by the dash lines and designations of width.

20. Declaration of Protective Covenants for Virginia Grove Subdivision recorded February 5, 2003 as document #2003-02860, including, but not limited to the following; single family residence, residential purposes only; type, size and kind of construction; plan approval; no dog runs or outside kennels; no trailer, mobile home or recreational vehicle shall be parked on property, or in an adjacent public street for more than 3 weeks. When any such vehicle is parked it shall be parked only in a driveway; fence restrictions; all driveways to be constructed of concrete; no noxious or offensive trade; no animals, reptiles, insects or birds of any kind shall be raised, bred or kept on property except for ordinary household pets provided they are not kept, bred or maintained for commercial purposes; no outside laundry or drying of clothes except in fenced area not to be visible to other homeowners; installation of hardwood trees and children playground equipment restrictions; establishes Homeowners Association; Covenants to run with the land. (See record for particulars)

21. Virginia Grove Creation of Association, Administration, Membership and Voting Rights in the Association recorded December 22, 2003 as document #2003-32523.

22. Assignment of Rents from HomeStar Bank, as Trustee under provisions of Trust Agreement dated March 2, 2005 and known as Trust #1173 to HomeStar Bank dated August 9, 2005 recorded August 10, 2005 as document #2005-17294. (Tract I)

23. Terms, powers, conditions and limitations contained in and imposed by Trust Agreement under which Trustee holds title to the premises in question.

The following endorsements have been approved for the mortgage policy, when issued: Environmental Protection Lien Endorsement and Alta-9 Endorsement.

NOTE: For information purposes, a copy of this commitment has been sent to the following parties: Sam Byrd; Bennett Commercial, Shelly Franco and Chip Chappell; OneSource, Jason Sellers, First National Mortgage Services, Mark; and Attorney Paula Jacovi.

NOTE: PLEASE DIRECT INQUIRIES REGARDING THIS TITLE COMMITMENT TO: Greg Gibson, (815) 933-5100.