**E-FILED**
Tuesday, 29 April, 2008  02:19:59 PM
Clerk, U.S. District Court, ILCD

**FILED**

APR 28 2008

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| SAMUEL R. BYRD, JR., PLAINTIFF, vs. DONALD L. DEMARAH, et al, DEFENDANTS. | CASE# 08-CV-2025 HAB-DGB DECLARATION IN THE SUPPORT OF AMENDED COMPLAINT-MOTION |

COMES NOW, PLAINTIFF, SAMUEL R. BYRD, JR, A PROSE LITIGANT IN THE ABOVE CAUSE OF ACTION IN THE ABOVE HONORABLE COURT. PLAINTIFF DOES HEREBY STATE THAT, HE HAS PREPARED AN AMENDED COMPLAINT TO HIS ACTION FILED, AND THAT HE HAS DONE SO, WITH LIMITED ACCESS TO THE ABSOLUTELY NECESSARY LEGAL MATERIAL(S; BOOKS; AND SUPPLY'S; NEEDED TO BE READY FOR TRIAL. PLAINTIFF ALSO STATES THAT, HE HAS MADE EVERY ATTEMPT TO RECEIVE, UPDATED LAW BOOKS FOR WHENEVER THEY MAY BE NEEDED, ALBEIT, REQUEST HAVE FALLEN ON DEFT EARS FOR, SEVENTEEN (17) MONTHS. THE PLAINTIFF IS SUBMITTING ALL OF HIS EXHIBITS THAT ARE AVAILABLE TO HIM, AT THIS TIME, WHICH INCLUDES MEDICAL RECORDS, ETC., TO SUPPORT HIS

1  VERY SERIOUS CLAIMS. X-RAY EXHIBITS FOR THIS
2  COURTS REVIEW, ARE LARGE IN NATURE, HOWEVER, I
3  DO SUBMIT THAT, EFFORTS ARE BEING MADE TO
4  OBTAIN, SMALLER COPIES FOR MAILING, AND FILING.
5  RADIOLOGY REPORTS ARE SUBMITTED, YET, THEY ARE
6  LIMITED IN THE COMPLETE FINDINGS. PLAINTIFF IN
7  THIS ACTION, WILL FILE COMPLETE RECORDS OF
8  SAME, ON HIS RECEPTION, "FORTHWITH."
9  THE PLAINTIFF IS GRATEFUL FOR THE OPPORTUNITY
10  TO, FINALIZE THIS MATTER AT TRIAL, AND PUT
11  THIS ISSUE TO REST. THE PLAINTIFF PRAYS FOR
12  RELIEF IN THE ABOVE HONORABLE COURT OF
13  THE UNITED STATES OF AMERICA.
14  EXECUTED ON THIS, 21st DAY OF APRIL, 2008, AT
15  ELGIN, ILLINOIS 60123.

PLAINTIFF - PROSE
IN FORMA PAUPERIS

'DECLARATION'

1

2 I, SAMUEL R. BURD, JR, AM THE PLAINTIFF IN

3 THE ABOVE ENTITLED ACTION IN THE ABOVE HON-

4 ORABLE COURT, AND DECLARE THAT, EACH AND

5 EVERYTHING STATED AND SUBMITTED IS, TRUE

6 AND CORRECT TO THE BEST OF MY BELIEF OF

7 WHAT I KNOW TO BE TRUE AND CORRECT, UNDER

8 THE LAWS OF THE UNITED STATES OF AMERICA.

9 EXECUTED ON THIS, 21ST DAY OF APRIL, 2008, AT ELGIN,

10 ILLINOIS 60123.

11

12                                         Samuel R. Burd

13                                         PRO SE PLAINTIFF

14                                         IN FORMA PAUPERIS

15      //

16      //

17      //

18      //

19      //

20      //

21      //

22      //

23      //

24      //

25      //

26      //

27      //

28      //

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

SAMUEL R. BYRD,
            PLAINTIFF,

VS.

DONALD DEMARAH, et al.
            DEFENDANTS.

CASE # 08-CV-2025

AMENDED COMPLAINT
TO INCLUDE ALL OF
THE JOHN DOE DEFENDANTS
IN THE ABOVE ACTION

THIS ACTION COMMENCED ON, 27TH, DAY OF FEB, IN
THE YEAR, 2007, FROM THE PLAINTIFF, VIA, U.S. CERT-
IFIED MAIL, FROM THE CITY OF KANKAKEE, COUNTY
OF THE SAME. THE PLAINTIFF DID FORWARD
THE ACTION TO THE U.S. DISTRICT COURT OF NEV-
ADA, HOWEVER, THAT COURT RESPECTFULLY ORDERED
THE ABOVE ACTION TRANSFERED TO ITS PROPER
VENUE, THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION. THE HONORABLE ABOVE COURT
THEN SENT ITS ORDER TO THE CLERK, ADVISING
THE PLAINTIFF TO FILE AN AFFIDAVIT TO PROCEED
IN FORMA PAUPERUS, WITHOUT PREPAYMENT OF
FEES, AND TO FORWARD DOCUMENTS IN SUPPORT
THEREOF IN SUPPORT OF PLAINTIFF REQUEST.
THE PLAINTIFF DID DO SO, ALBEIT, HE WAS SO

1   HENDERED BY THE OFFICIALS, AT THE JEROME
2   COMBS DETENTION CENTER, KANKAKEE COUNTY, FOR
3   OBVIOUS REASONS, THEY ARE ALSO DEFENDANTS
4   IN THIS ACTION. THE PLAINTIFF HAD TO USE
5   AND SUBMIT THE ONLY CERTIFIED PRINTOUTS, BY
6   AND WHICH WERE, PROVIDED BY THOSE NAMED
7   DEFENDANTS, DURING HIS STAY. AFTER ALL, THIS
8   PLAINTIFF DID SUBMIT HIS DECLARATION AS TO
9   THIS POINT OF, HOW THE OFFICIAL WAY OF DOING
10  THINGS WERE, ANTIQUATED, AT BEST. PLAINTIFF
11  IS CERTAIN THAT, THIS COURTS ORDER AND THE
12  PLAINTIFFS ORDERING THE OFFICIALS AT COMBS TO
13  SUBMIT, WHICH THEY FAILED, CROSSED IN THE U.S.,
14  MAIL.
15  WHEREFORE: THE PLAINTIFF DOES RESPECTFULLY
16  SUBMIT THE ATTACHED AND MOVING PAPERS TO
17  THIS HONORABLE COURT.
18
19          Signed ORIGINAL        I REMAIN, RESPECTFULLY
20
21                                  SAMUEL R. BYRD
22                                      PLAINTIFF
23  "
24  "
25  "
26  "
27  "
28  "

2

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

SAMUEL R. BYRD,
     PLAINTIFF,

VS.

DONALD L. DEMARAH;
(1)DON DEMARAH'S CONSTRUCTION;
(2)GREGG KLINCE, BOURBONNAIS, IL,
POLICE DEPARTMENT; (3)JEFF GODIN; Dr. BALCUS;
ESQUIRE, (4)LAWRENCE S. BEAUMONT;
ESQUIRE, (5)MICHAEL QUINLIN; Dr. SIMONE;
ASST., STATES ATTY, KANKAKEE COUNTY;
(6)HOMESTAR BANK, MANTENO, ILLINOIS;
(7)NURSE JEAN, F. JCDC MEDICAL DEPT.;
(8)C/O SGT. SHORNDORF, J.C.D.C., (9)LT.
SMITH, J.C.D.C., (10)C/O O'NEAL, J.C.D.C.;
(11)C/O NOLAN, J.C.D.C.; (12)C/O MATHEWS, J.C.D.C.;
(13)C/O CARPENTER, J.C.D.C.; (14)C/O BURNS, J.C.D.C,
(15)C/O VENKE, J.C.D.C.; (16)OFFICIALS IN CHARGE
OF INMATES MAIL, J.C.D.C.; (17)STANDARD
TITLE COMPANY KANKAKEE; (18)GREGE GIBSON;
(19)KAREN LLEWELYN; (20)1 SOURCE REAL ESTATE &
FINANCING; (21)BOB BRACKNEY; (22)JASON SELLERS;

CASE #08-cv-2025
PLAINTIFFS AMENDED
COMPLAINT UNDER
28 U.S.C. 2680; 2680
(h); 42 § 1983
EXHIBITS ATTACHED

3

1   LOAN OFFICERS, TOPEKA, KS,
2            DEFENDANTS.
3   _____

**1ST CAUSE OF ACTION**

4   THE PLAINTIFF IN THIS ACTION WAS SEEKING
5   A PURCHASE OF A NEW HOME FOR HIS FAMILY, ON OR
6   ABOUT, JULY, 2006, IN BOURBONNAIS, ILLINOIS, 60914
7   THROUGH, BENNETT COMMERCIAL, SAME CITY AND STATE.
8   AFTER SEVERAL DAYS OF SEARCHING, THE PLAINTIFF DID
9   COME UP ON A NEW HOME, LOCATED @ 1250 GABLES BLUFF
10  DRIVE, BOURBONNAIS, ILLINOIS 60914, BUILT BY, DONALD L.
11  DEMARAH, DEMARAH'S CONSTRUCTION INC., SAME CITY
12  AND COUNTY OF KANKAKEE. THE PLAINTIFF ENTERED
13  INTO A CONTRACT WITH, DEFENDANT DEMARAH, THROUGH
14  HIS AGENT, CHIP CHAPPEL, BENNETT COMMERCIAL, AND
15  MY AGENT AT THE TIME, SHELLY FRANCO, BENNETT COMM-
16  ERCIAL, THE AGREEMENT THAT WAS ENTERED UPON
17  WAS THAT THE SELLER, DONALD L. DEMARAH & DEFENDANT
18  WAS TO COMPLETE REHAB CONSTRUCTION ON THE HOME, DUE
19  TO THE FACT THAT, THE PLAINTIFF WAS SECURING A REHAB
20  CONSTRUCTION LOAN, VIA, ONE SOURCE REAL ESTATE AND
21  FINANCING, TOPEKA, KS. THE REHAB CALLED FOR THE
22  DEFENDANT DEMARAH TO, (1) COMPLETE BASEMENT OF NEW
23  DWELLING, WITH WORK THAT WAS CONTRACTED TO FINISH;
24  (2) PLACE A SIX (6) FOOT FENCE AROUND PROPERTY FOR PRIVACY;
25  (3) EXTEND THE PATIO AT (REAR OF) HOME 64 4FT; RESOD LAND
26  THROUGH AND LEVEL; (4) PLACE SECURITY CAMERA'S ON THE
27  ROOF OF DWELLING FOR SECURITY OF PLAINTIFFS FAMILY;
28  (5) DO ALL REPAIRS AND CORRECTIONS NOTED BY INSPECTOR.

4

1  DEFENDANT DEMARAH FAILED ON ALL ASPECTS OF THE
2  CONTRACT AGREEMENT BETWEEN THE BUYER (PLAINTIFF)
3  AND THE SELLER (DEFENDANT DEMARAH), DURING THE
4  TIME OF THE CONTRACT FOR SALE OF THE HOME IN
5  QUESTION, LOCATED @ 1250 EAGLES BLUFF DRIVE, BOURBONN-
6  AIS, ILLINOIS AND, BEFORE THE DISPUTE BETWEEN
7  THE PLAINTIFF AND DEFENDANT, DEFENDANT WAS EAGER
8  TO INVEST IN A CONCERT TOUR, WHICH THE PLAINTIFF
9  WAS SCHEDULING FOR THE SUMMER OF 2007, BY
10  AND WHICH THE DEFENDANT (DEMARAH) CALLED THE
11  PLAINTIFF (BYRD) SOME FIFTEEN TIMES, BEGGING TO
12  GET INVOLVED. AFTER PLAINTIFF ADMONISHED THE
13  DEFENDANT (DEMARAH) OF THE RISK FACTOR, THE SAME
14  DEFENDANT STILL WANTED IN. PLAINTIFF (BYRD) DID
15  SO ADVISE DEFENDANT (DEMARAH) TO, TALK TO HIS
16  ATTORNEY, GET ADVISE ON INVESTMENT, CALL AFTER
17  SPEAKING TO HIS ATTORNEY, (DEFENDANT GODIN) AND
18  GET BACK TO ME, THE PLAINTIFF, DEFENDANT AND HIS
19  ATTORNEY DID DO SO, THOUGHT IDEA WAS GREAT AND
20  THE DEFENDANT INVESTED, $12,500 U.S. DOLLARS INTO
21  THE MARIAH CAREY, PLANNED CONCERT TOUR. THE
22  PLAINTIFF STERNLY WARNED THE DEFENDANTS THAT, HE,
23  DEMARAH, SHOULD NOT IN ANYWAY LET THIS SEPERATE
24  AGREEMENT INFRINGE ON THE ISSUE'S OF THE
25  SALE OF THE HOUSE TO THE PLAINTIFF, TO MAKE A
26  LONG STORY SHORTER, THE DEFENDANTS (DEMARAH - AND
27  GODIN) DID JUST THAT, CAUSING THE SELLER (DEMARAH)
28  TO STOP HIS REHAB WORK COMPLETELY ON HOME AND THEN

1   CAUSING PLAINTIFF TO NOT GET LOAN, AND USE HIS
2   OWN FUNDS THAT HE HAD, AT THAT TIME TO PURCHASE
3   THE SAID PROPERTY IN QUESTION. DEFENDANT/SELLER
4   DEMARAH THEN CALLED PLAINTIFF ON THREE (3)
5   SEPERATE TIMES ON HIS OUT-OF-STATE PHONE, LEAVING
6   THREATNING EXTORTED VOICE MAIL FOR PLAINTIFF.
7   DEFENDANT DEMARAH EVEN CANCELLED ALL BUSINESS
8   BETWEEN HIMSELF AND PLAINTIFF (BURD) HOWEVER, DID
9   SO DEMAND $125,000 IN RETURN, ON HIS $12,500
10  CASHIERS CHECK INVESTMENT. PLAINTIFF BURD, IN
11  FACT CALLED THE DEFENDANT BACK REGARDING HIS
12  THREATS, AND LET HIM KNOW THAT HE (DEFENDANT) WOULD
13  ONLY BE GETTING BACK HIS INITIAL INVESTMENT AND
14  NOTHING ELSE. PLAINTIFF WAS EVEN KIND ENOUGH
15  LOAN THE DEFENDANT (DEMARAH) $36,920, VIA A
16  POST-DATED CHECK, DEFENDANT AGREED TO HOLD, UNTIL
17  FIVE DAYS AFTER ITS ISSUE TO HIM, AS THE PLAINTIFF
18  (BURD) NEEDED TO HOLD ON TO THE ONLY CASH HE HAD
19  ON HAND DURING THE TIME, $70,000.00, IN CASE HE
20  NEEDED ANY ADVANCE MONEYS TO, FINISH SECURING
21  THE TOUR DATES. WELL DEFENDAND (DEMARAH) VIOLATED
22  THIS AGREEMENT ALSO, CAUSING PLAINTIFF TO, PLACE A
23  STOP PAYMENT ON THE CHECK ISSUED. ONCE THIS
24  WAS DONE, DEFENDANTS (DEMARAH AND GODIN) DID
25  CAUSE A FALSE POLICE REPORT TO BE ISSUED, STATING
26  THE PLAINTIFF GOT LOANS FROM, DEFENDANT DEMARAH, AS
27  OPPOSED TO, THE OTHER WAY AROUND. THE DEFENDANTS
28  DEMARAH AND HIS ATTORNEY GODIN, EVEN WENT ON TO GET

1  A COURT AUTHORIZATION TO GAVES DROP/WIRE TAPP
2  A PHONE CONVERSATION OF THE PLAINTIFF (BYRD), BY
3  SWEARING OUT A FALSE AFFIDAVIT, ALONG WITH #2
4  DEFENDANT, POLICE DETECTIVE GREGG KLINCE, BOURB-
5  ONNAIS POLICE DEPARTMENT, ON OR ABOUT, NOVEMBER
6  10-14TH, 2006. THIS AUTHORIZATION WAS GIVEN, YET,
7  THERE WERE SEVERAL THINGS WRONG. THE PARTY'S
8  STATED UNDER OATH THAT, THE PLAINTIFF WOULD BE
9  CALLING TRYING TO GET MONEY BACK FROM (DEFENDANT
10  DEMARAH) AND PLAINTIFF IN THIS ACTION (BYRD) WAS
11  DISCRIBED AS, "THE SUSPECT" IN THE STATE CRIMINAL
12  ACTION. WELL THE CALL THAT WAS RETURNED TO
13  THE DEFENDANT (DEMARAH AND GODIN) WAS A CONTIN-
14  UATION OF A PHONE CONVERSATION, WHICH INCLUDED
15  THAT OF PLAINTIFFS CORPORATE COUNSEL, PETER CUSICK
16  FROM, N.Y.C. THESE DEFENDANTS WERE WELL AWARE
17  OF THAT AND RECORDED PRIVILEDGE COMMUNICATION
18  IN ITS TOTALITY ANYWAY, WHICH WAS, AGAINST
19  THE LAW. WHEN THE COURT BECAME AWARE, IT
20  ORDERED THE TAPES SEALED, AND, NOT TO BE PUBLISH-
21  ED. TO THE CONTRARY, STATES ATTORNEY'S OFFICE OF
22  KANKAKEE COUNTY, DEFENDANTS #5, DID SO ANYWAY, AND
23  TRIED TO GET TAPES BACK FROM PLAINTIFF, WHO STATED,
24  "NOT A CHANCE IN HELL". PLAINTIFF HAS SECURED THE
25  TAPES FOR PROOF. PLAINTIFF BYRD WAS THEN, FALSELY
26  ARRESTED BY THE BOURBONNAIS POLICE DEPARTMENT, UNDER
27  ORDERS OF DETECTIVE KLINCE, (DEFENDANT #2) KNOWING THE
28  PROSECUTION WAS MALICIOUS, WITH WANTON, RECKLESS, CONST VIOL.

1 DEFENDANT DEMARAH, EVEN GOT PAID $46,700 CASH
2 HE DID NOT EARN, AS A SETTLEMENT, ASKED PLAINTIFF
3 NOT TO REPORT THE 1099 TO THE IRS. (PLAINTIFF BYRD)
4 NOTIFIED IRS OF DEFENDANTS ATTEMPT TO SOLICIT
5 TAX FRAUD, AND THE PAYMENT TO DEMARAH. BY
6 NOW, I WOULD HOPE HE, DEMARAH, WAS ARRESTED
7 AND AUDITED. (SEE ATTACHMENTS) DEFENDANT DEMARAH
8 RECEIVED THESE FUNDS, KNOWING HE COULD NOT REPAY
9 PLAINTIFF BYRD, SO HE CAME UP WITH A COVER FOR
10 HIS UNLAWFUL BANK STRUCTURED TRANSACTIONS ON
11 MONIES HE OBVIOUSLY, USE FOR OTHER PURPOSES AND
12 THEN, CLAIMED HE GAVE THESE FUNDS TO PLAINTIFF
13 BYRD, CAUSING HIS (BYRD'S) ARREST. DEFENDANTS # 12
14 3-4-5-6-17-18-19-20-21-22, TO WIT; DEMARAH; KUNCE;
15 GODIN; BEAUMONT; QUINLIN; HOMESTAR BANK; STANDARD
16 TITLE COMPANY; GREGG GIBSON; KAREN LLEWELYN; 1 SOURCE
17 REALESTATE AND MORTGAGE; BOB BRACKNEY; JASON SELLERS;
18 DID SO CAUSE THE PLAINTIFF TO LOSE AN ESTIMATED
19 $10,000,000, IN POTENTIAL CONCERT PROFIT ON, HIS OWN
20 PRODUCTION OF A, 2007, MARIAH CAREY CONCERT SUMMER
21 TOUR, LAS VEGAS, NEVADA, BY CAUSING THE PLAINTIFFS
22 INCARCERATION, SINCE NOVEMBER 17, 2006, FOR NOT
23 ANY OTHER REASON, BUT, GREED AND DECEIT. PLAINTIFF
24 SEEKS DAMAGES IN THE AMOUNT OF $75,000,000, DUE
25 TO THE FACT THAT THESE DEFENDANTS ALSO CAUSED A
26 GREAT HARDSHIP ON PLAINTIFFS CHILDREN, AGES NOW, 2½
27 AND 4 YRS, AND THEIR MOTHER, AS A SINGLE MOM, AND
28 CHILDREN LEFT FATHERLESS;

2nd CAUSE OF ACTION

1

NOVEMBER 17, 2006

2 PLAINTIFF WAS TAKEN TO THE BOURBONNAIS, ILLINOIS

3 POLICE STATION, AFTER HE WAS ARRESTED BY, POLICE OFFICER

4 HUNNICUT, HOWEVER, WAS HELD BY SAME OFFICER, UNTIL

DEFENDANT

5 DETECTIVE, GREGG KUNCE, ARRIVED AT THE LOCATION OF

6 ARREST, THE PLAINTIFFS' HOME, WHICH WAS LOCATED AT

7 773 EDGEMERE, BOURBONNAIS, ILLINOIS 60914, AND IN CLEAR

8 VIEW OF PLAINTIFFS YOUNG CHILDREN, AND THEIR MOTHER, AS

9 THEY WATCH THE WHOLE SCENE, FROM THE SECOND FLOOR

10 WINDOW OF PLAINTIFFS DWELLING. PLAINTIFF AND HIS

11 FAMILY WAS ABSOLUTELY HUMILIATED, BEFORE PLAINTIFFS

12 NEIGHBORS. DEFENDANT KUNCE, OF THE BOURBONNAIS POLICE

13 DEPARTMENT, QUESTION PLAINTIFF ON THE SPOT BY ASKING HIM, "DO

14 YOU KNOW DON DEMARAH?" PLAINTIFF'S RESPONSE, "I'M ASHAME

15 TO ADVISE YOU OF THE FACT THAT, I HAVE HAD THE UNPLEASANT

16 EXPERIENCE TO, BE TAKEN BY THE SHADY CONTRACTOR." AT

17 THAT POINT, DETECTIVE KUNCE STATED, "WELL YOU ISSUED

18 HIM A BAD CHECK, AND, THATS NOW MY BUSINESS." "PLAINTIFF

19 RESPONDED, "THAT CHECK WAS A LOAN, FROM ME, TO MR. DEMARAH,

20 (MAIN DEFENDANT IN THIS ACTION) AND I VOIDED THE LOAN

21 WHEN, MR. DEMARAH BREACHED THE AGREEMENT TO, HOLD FOR A

22 FIVE (5) DAY PERIOD, AND, WHY HAVE YOU NOT, OR YOUR DEPT.,

23 OFFICER READ ME MY RIGHTS?" NOTHING FURTHER WAS SAID

24 BY THE OFFICERS AS THE PLAINTIFF (BYRD) WAS TAKEN INTO

25 CUSTODY. WHEN THE PLAINTIFF ARRIVED AT THE POLICE STATION,

26 HE WAS, PHOTOGRAPHED, PRINTED, QUESTIONED BY, DEFENDANT

27 KUNCE, WHO DID BREAK THE LAW BY, PURPOSELY BACK DATING

28 THE ARREST ON THE MIRANDA WAIVER TO, COINCIDE WITH THE

1  UNLAWFUL WIRE TAPPED CONVERSATIONS OF, PLAINTIFF
2  AND HIS CORPORATE ATTORNEY, AS STATED IN, 1ST CAUSE
3  OF ACTION. ALTHOUGH THE PLAINTIFF ADVISED THE
4  DEFENDANT KUNCE OF HIS ACT, THE DEFENDANT WAS
5  BRAZEN ENOUGH TO STATE, "WELL, I GUESS THATS A
6  GOOD REASON FOR THE JUDGE TO, DISMISS THE CRIMINAL
7  CASE," PLAINTIFF DOES HAVE THE TAPES AND DOCUMENTS
8  TO SUPPORT, AND, EVEN EVIDENCE HE GAVE DEFENDANT IN
9  THIS CAUSE OF ACTION, THAT OF DOCUMENTS AND RECORDINGS
10  LEFT BY, DEFENDANT DEMARAH, WHICH PROVED PLAINTIFF
11  WAS THE VICTIM, ALL ALONG, (DEFENDANT DEMARAH'S PHONE
12  CALLS OF, THREATS, EXTORTION). PLAINTIFF WAS IN N.Y.C., ON
13  DATE THAT DEFENDANT KUNCE, PLACED ON, UNLAWFUL PHONE
14  TAPP, AND MIRANDA WAIVER. DEFENDANT KUNCE, KNEW HE
15  HAD A PROBLEM, AS, HE WENT BACK TO WORK ON THE FOLLOWING
16  DAY, SATURDAY, NOVEMBER 18, 2006, AND TRIED TO COVER UP
17  HIS BLUNDER BY, ENTERING DATA ON HIS COMPUTER TO THE
18  EFFECT OF, "I MISTAKENLY BACK DATED THE SUSPECTS (BYRDS')
19  ARREST WAIVER, AND, TAPPED CONVERSATION." DEFENDANT DETECT-
20  IVE KUNCE IS A TWENTY FIVE YEAR VETERAN ON THE
21  POLICE FORCE, AND A JURY WOULD FIND THAT HARD TO BELIEVE
22  INDEED. PLAINTIFFS' EXHIBITS WILL SHOW SERIOUS VIOLAT-
23  IONS BY THIS DEFENDANT. PLAINTIFF SEEKS DAMAGES IN THE
24  AMOUNT OF $50,000,000., FOR THE ACTIONS AGAINST HIS
25  PERSON, CAUSED BY THIS DEFENDANT; AND HIS (PLAINTIFFS) (FAMILY);
26  "
27  "
28  "

E-FILED
Tuesday, 29 April, 2008  02:20:44 PM
Clerk, U.S. District Court, ILCD

1    3RD CAUSE OF ACTION
2    ON OR ABOUT, NOVEMBER 23, 2006, A STATE JUDGE OF THE
3    CIRCUIT COURT OF KANKAKEE COUNTY'S TWENTY FIRST JUDI-
4    CIAL CIRCUIT, ISSUED A WARRANT FOR THE SEARCH
5    AND SEIZURE OF ITEMS FROM THE PLAINTIFF'S RESIDENCE
6    AT 773 EDGEMERE, BOURBONNAIS, ILLINOIS 60914. DEFENDANT
7    DETECTIVE KUNCE, ALONG WITH, SEVERAL OTHER OFFICERS
8    OF THE BOURBONNAIS POLICE DEPT, STATES ATTORNEY'S OFFICE
9    DID SO ENTER THE RESIDENCE OF THE PLAINTIFF, SEIZING
10   NOT JUST THE ITEMS LISTED TO TAKE BUT, EVERYTHING
11   IN ITS' TOTALITY BELONGING TO THE PLAINTIFF, WHICH
12   HAD NOTHING WHAT-SO-EVER TO DO WITH THE CRIMINAL
13   MATTER. THE PRIVACY OF THE PLAINTIFF, HIS CHILDREN,
14   THE MOTHER OF HIS CHILDREN WAS VIOLATED ON SUCH A
15   GRAND SCALE THAT, THE JUDGE HEARING THE MATTERS
16   GRANTED THE PLAINTIFFS (BYRD) MOTION TO HAVE ALL OF
17   THE PROPERTY RESTORED BACK TO THE PLAINTIFF, SOME
18   TEN MONTHS LATER, THE DEFENDANT, KUNCE, QUINLIN, OF THE
19   STATES ATTORNEY'S OFFICE OF KANKAKEE COUNTY WERE SO BOLD
20   THAT, TO THIS DAY, THEY HAVE NOT RETURN SEVERAL ITEMS
21   OF THE PLAINTIFFS', INCLUDING PERSONAL TAPES, PHOTOS, DOCUMENTS
22   MEMOIRS, AND OF PLAINTIFFS' BEING ON RECEIVING END OF
23   RETRIBUTION, DUE TO HIS BEING A WHISTLE BLOWER, DURING
24   HIS TIME OF EMPLOYMENT WITH, THE UNITED STATES
25   HOUSE OF REPRESENTIVES, CONGRESSIONAL POST-OFFICE, AND
26   AT THE TIME OF, WATERGATE, AND THE POSTAL SCANDAL
27   ERRA. THESE DEFENDANTS CONTINUE TO THIS DATE, OBSTRUCT
28   JUSTICE AND HENDER EVIDENCE BELONGING TO PLAINTIFF IN

1  VIOLATION OF FEDERAL LAW. PLAINTIFF IS THE RIGHTFUL
2  OWNER, ESPECIALLY, SINCE HE HAS PAID ATTORNEY'S OVER THE
3  YEARS, IN ACCESS OF #100,000 TO RESEARCH IT, TRACK DOWN
4  AND RETREIVE, FROM 1973 THRU 2006. PLAINTIFF SEEKS
5  DAMAGES IN THE AMOUNT OF ~~#~~ $50,000,000, DUE TO THE
6  ACTIONS OF THE DEFENDANTS;

7                    4TH CAUSE OF ACTION
8  THE DEFENDANTS, KUNCE; STATES ASSISTANT ATTORNEY'S, QUINLAN; DONALD
9  DEMARAH; HOME STAR BANK OFFICIALS, (NAMES NOT GIVEN TO
10 PLAINTIFF) DID, ON, OR ABOUT, NOVEMBER 10, 2006, ALTER, RE-
11 DUCE, HENDER EVIDENCE FROM THE STATE COURT, AND THE
12 ALLEGED GRAND JURY TO WIT: THE CHECK POST-DATED
13 AGREEMENT LOAN TO, DEFENDANT DEMARAH BY, BLOCKING
14 OUT THE BANK ENDORSEMENT STAMP ON THE BACK OF
15 CHECK IN QUESTION, CHECK # 1011, IN THE AMOUNT OF
16 #36,920, WHICH CLEARLY SHOWS THAT, HOMESTAR BANKS
17 PERSONNEL, AND, DEFENDANTS MENTIONED, ALLOWED THE
18 CHECK TO BE DEPOSITED, BEFORE IT'S AGREED DATE AND
19 WHEN HOMESTAR BANK GAVE DEMARAH THE CASH IN
20 ADVANCE, KNOWING THEY BROKE BANKING LAW'S, THEY
21 PANIC, AT ONCE, VIOLATION LAW FURTHERS, BY TAMPERING
22 WITH EVIDENCE, HIDING THEIR CRIME. PLAINTIFF DID
23 RETREIVE A COPY, FRONT IN BACK OF CHECK, 15 MONTHS LATER
24 FROM HIS FORMER BANK, SHOWING THE DEFENDANTS WELL
25 ORCHESTRATED VIOLATION OF THE LAW. PAYMENT WAS
26 STOPPED ON CHECK BY PLAINTIFF (BYRD), AFTER DEFENDANT IN
27 THIS ACTION WAS ADVISED BY PLAINTIFF, AND FORMER BANK
28 OF THE PLAINTIFF (BYRDS), NATIONAL CITY, WHOM SENT COPY TO BYRD.

1  PLAINTIFF SEEKS DAMAGES IN THE AMOUNT OF $25,000,000.,
2  DUE TO ACTIONS CAUSED BY THE DEFENDANTS;

                    5TH CAUSE OF ACTION

4  DEFENDANT LAWRENCE S. BEAUMONT, DURING THE
5  TIME HE WAS COUNSEL REPRESENTATION FOR PLAINTIFF
6  DID SO, HENDER, DESTROY, REFUSE TO HAND OVER THE
7  EVIDENCE GIVEN HIM BY PLAINTIFF IN HIS STATE
8  MATTER AND, VIOLATED THE PRIVILEDGES OF CONFIDEN-
9  TIALITY, BY AND BETWEEN CLIENT/ATTORNEY BY, INTENT-
10  IONAL RELEASE OF INFORMATION ABOUT PLAINTIFF, WITHOUT
11  THE AUTHORIZATION OR WAIVER FROM PLAINTIFF TO
12  DO SO. DEFENDANT BEAUMONT ALSO VIOLATED THE HIPPA
13  LAW BY, GETTING MEDICAL INJURY OF THE PLAINTIFF, AND
14  WITHOUT THE PLAINTIFF'S KNOWLEDGE, AND, DISCUSSING
15  ISSUES WITH AUTHORITY'S AGAINST THE PLAINTIFF THAT
16  HAD NO LEGAL RIGHT TO HAVE SAME. PLAINTIFF DID SO
17  STATE ON RECORD THAT, DEFENDANT BEAUMONT WAS A, LIAR,
18  A CHEAT, AND A SON-OF-A-BITCH WHO, COULDN'T BE TRUSTED
19  BECAUSE, HE IS CROOKED AS THE THE LETTER "Z", ETC.
20  (SEE ATTACHED DOCUMENTED EXHIBITS, OTHERS TO FOLLOW). PLAINTIFF DOES
21  SEEK DAMAGES IN THE AMOUNT OF $25,000,000., DUE TO
22  THE ACTION OF THE DEFENDANT;

                    6TH CAUSE OF ACTION

24  PLAINTIFF, WHILE IN THE CUSTODY OF OFFICIALS, AT
25  THE JEROME COMBS DETENTION CENTER, OPPERATED
26  BY, THE KANKAKEE COUNTY SHERIFF'S DEPARTMENT
27  KANKAKEE, ILLINOIS 60901, WAS SUBJECTED TO GROSS
28  WANTON, RECKLESS ABUSE BY, DEFENDANTS, NURSE JEANNE;

1  C/O NOLAN; C/O MATHEWS; C/O O'NEAL; C/O CARPENTERO; C/O
2  SGT. SHORDORF; C/O LT. SMITH; BY AND WHICH, ON THE 28TH
3  DAY OF, JULY, 2007, PLAINTIFF WAS, RUSHED TO THE SAINT
4  MARY'S HOSPITAL, LOCATED ON COURT STREET, KANKAKEE, IL,
5  60901, FROM THE JEROME COMBS DETENTION CENTER. THE
6  PLAINTIFF, ON NUMEROUS OCCASSIONS ADVISED THE
7  MEDICAL DEPARTMENT, NURSE JEANNE FLAGEL, THAT, HE NEEDED
8  TO, BEGIN TAKING MEDICATION FOR, A VERY SERIOUS
9  SINUS INFECTION CALLED, BILATERAL, SPHENOID, MAXILLARY,
10 SINUSITIS, CONSISTING OF, AMOXICLAV 500MG, OR, 875
11 MG OF, AUGMENTON. ALTHOUGH THE RESPONSE
12 WAS ALWAY'S WITH A QUESTION, IN WRITTING, I
13 THE PLAINTIFF HAD THE UNPLEASANT EXPERIENCE
14 OF GOING UNTREATED FOR 8 MONTHS, WHICH AT
15 THAT POINT, INFECTION HAD SET IN, GLAND ON
16 LEFT SIDE OF NECK WAS SWOLLEN TO THE
17 SIZE OF A GOLF BALL, BLOOD PRESSURE WAS
18 ELEVATED TO; 205/165; HEART RATE WAS, ELEVATED
19 TO; 128 BEATS A MINUTE; TEMPERATURE WAS 103° AND
20 CLIMBING; O₂ LEVEL WAS, 92 AND FALLING; MULTIPLE
21 CONVULSIONS; AND UNCONSCIOUS, YET, THE
22 OTHER DEFENDANT'S, C/O SGT. SHORDORF; C/O LT. SMITH;
23 HAD THE ATTITUDE THAT, PLAINTIFF WAS, FAKING.
24 DEFENDANT C/O LT. SMITHE, WENT AS FAR AS, DOING
25 A STERNUM RUB, WITH A 18", DIRTY FLASH LIGHT
26 SO VIOLENTLY THAT, IT CREATER A LARGE CUT
27 DOWN THE CENTER OF THE PLAINTIFFS' CHEST,
28 BRUSING PLAINTIFFS' STERNUM, WITH CONTUSIONS,

1  CAUSING ADDITIONAL INFECTION TO THE PLAINTIFF
2  WHO THEN HAD TO BE MEDICATED EVEN FURTHER BY
3  MEDICAL STAFF OF, ST. MARY'S HOSPITAL, KANKAKEE
4  COUNTY, ILLINOIS. TO MAKE MATTERS WORSE, THE
5  MEDICAL DEPT., J.C. DENTION CENTER MEDICATED THIS
6  PLAINTIFF, WITHOUT TAKING BLOOD; DOING AN X-RAY;
7  OR, HOLDING ON TO MEDICAL RECORDS PLAINTIFF DID
8  SUPPLY TO THE MEDICAL DEPARTMENT DEFENDANTS OF
9  J.C. DETENTION CENTER. FOUR COPIES WERE DESTROYED
10 BY THOSE DEFENDANTS, ON PURPOSE, AND THE PLAINTIFF
11 HAS THE TAPES TO PROVE IT, IN A SAFE PLACE FOR
12 THIS COURTS REVIEW. C/O SGT. SHORNDORF, DID
13 WILFULLY, WITH WANTON, RECKLESS FORETHOUGHT,
14 DID TAKE THE SAME 18" FLASHLIGHT FROM, C/O
15 LT. SMITHE, AND, STRIKE THE PLAINTIFF DIRECTLY
16 ON THE SWOLLEN GLAND, LEFT SIDE OF NECK, AS
17 ALL THIS TOOK PLACE IN A CELL, LOCATED IN THE
18 BOOKING PART OF THE DETENTION CENTER NUMBERED
19 I-6. PLAINTIFF KNOWS THIS BECAUSE, HE COULD FOR
20 SURE HEAR ALL THAT WAS GOING ON, ALBEIT, COULD
21 NOT SPEAK AND, DID OPEN HIS EYES AT ONE POINT
22 TO, SEE C/O SGT. SHORNDORF, AND, CO-DEFENDANT, C/O LT.
23 SMITHE, STANDING OVER HIM STATING, "THATS
24 WHAT I THOUGHT," REFERENCING THE PLAINTIFFS
25 OBVIOUS PAIN. DEFENDANTS DID NOT REMOVE THE
26 PLAINTIFF FROM HIS CELL AREA UNTIL, 45 MINS., AFTER
27 GOING OUT COLD, 25 MINUTES LATER, BEFORE THEY
28 CALLED, 911. THE PLAINTIFF WAS, SLIPPING AWAY.

1 ON THE SAME ISSUES, PARAMEDICS FINALLY ARRIVED
2 AND ASKED DEFENDANT, C/O SHORNDORF, C/O LT. SMITHE, "HOW
3 LONG HAS THE PLAINTIFF BEEN IN THIS CONDITION?"
4 THE DEFENDANTS RESPONDED, "ABOUT 10 MINUTES." THE
5 PARAMEDICS RESPONDED BY SAYING, "HE (PLAINTIFF)
6 HAS BEEN IN THIS CONDITION LONGER THEN ANY
7 FUCKING, 10 MINUTES. LETS GET HIM ON THE AMB-
8 ULANCE STRETCHER RIGHT NOW, GET HIM OUT
9 OF HERE TO, THE HOSPITAL FULL SIREN'S, HE
10 SWEATING PROFUSELY, TEMPERATURE'S NOW, 104°."
11 WHEN ARRIVING AT HOSPITAL, MEDICAL STAFF TOOK
12 A LOOK AT THE PLAINTIFF AND ASKED THE TRAIL
13 C/O DELUTH, "HOW DID HE (PLAINTIFF) GET THIS BIG
14 CHEST INJURY?" C/O DELUTH RESPONDED, "THE LT, C/O
15 SMITHE, GAVE HIM A, LIGHT STERNUM RUB." THE
16 MEDICAL STAFF'S RESPONSE WAS TO THE POINT, AND
17 FIRM. "THIS IS NO LIGHT STERNUM RUB, THIS
18 IS AN ASSAULT, WITH INTENT TO COMMIT, GREAT
19 BODILY INJURY, AND WE ARE NOTIFYING THE
20 HOSPITAL ADMINISTRATOR, AND MAKING A RECORD
21 OF HIS INJURIES." THE NURSE TOUCHED MY RIGHT
22 SHOULDER GENTLY AND SAID, "MR. BYRD, WE ARE
23 GOING TO BE YOUR ADVOCATES FOR, WHAT THEY
24 DID TO YOU, AT THE COMBS DETENTION CENTER. I
25 WANT YOU TO KNOW THAT, AND IF WE CANT BRING
26 DOWN YOU FEVER, BLOOD PRESSURE, HEART RATE, AND
27 RAISE YOUR OXYGEN LEVEL YOU WILL BE STAYING
28 IN THE HOSPITAL." I OWE THEM MY THANKS.

1  PLAINTIFF SEEKS DAMAGES IN THE AMOUNT OF $50,000,000,
2  FOR THE ACTIONS CAUSED BY THE DEFENDANTS IN THIS ACTI-
3  ON, DEFENDANTS, C/O O'NEAL; C/O NOLAN; C/O CARPENTERO; C/O MATTERS, C/TECCEL, AT PLAINTIFF ILLNESS

**7TH CAUSE OF ACTION**

5  DURING PLAINTIFFS DETENTION, AT THE JEROME COMBS
6  DETENTION CENTER, HE WAS SUBJECTED TO FALSE, RESTRICTED
7  TO CELL, CUBICLE LOCK DOWNS, SIMPLY BECAUSE HE VOICED
8  HIS CONCERNS OF, CORRECTION STAFF, MEDICAL STAFFS HENDER-
9  ING OF, PLAINTIFF'S NECESSARY USE OF A CHAIR IN HIS
10  CELL-CUBICLE, DUE TO INJURIES TO HIS BACK-KNEE-HEAD
11  AND NECK, FROM A SERIOUS AUTO ACCIDENT, 1974. DEFENDANTS
12  C/O NOLAN; C/O O'NEAL; C/O CARPENTERO, C/O; NURSE JEANNE; DID
13  SO CONSPIRE TO, HIDE THE PLAINTIFF'S NEED FOR THIS
14  CHAIR BY STATING IN FALSE REPORTS, "PLAINTIFF HAD NO SUCH
15  INJURIES". HOW VERY WRONG THEY ARE, AS PLAINTIFF IN
16  THIS ACTION (WILL SUBMIT) THE EXHIBITS TO THE CONTRARY OF THE
17  DEFENDANTS PREMEDITATED FALSEHOODS, PLAINTIFF HAS BEEN
18  SUFFERING FROM PAST INJURIES FOR, 34 YRS, AND IN OTHER
19  WORDS, SINCE 1974 ACCIDENT, WHICH HE WAS NEVER THOUGHT
20  TO; WALK AGAIN, PLAINTIFF SEEKS DAMAGES IN THE AMOUNT
21  OF $20,000,000, FOR THE ACTIONS CAUSED BY THESE LISTED
22  DEFENDANTS;

**8TH CAUSE OF ACTION**

24  DURING THE MONTH OF SEPTEMBER, 2007, THE PLAINTIFF
25  WAS MAKING PREPERATION FOR HIS MORNING ACTIVITY
26  WHEN, HE WAS VERBALLY THREATENED BY, ANOTHER JAIL
27  DETAINEE, AT THE JEROME COMBS DETENTION CENTER.
28  DURING THIS TIME, C/O BURNS, WAS ON DUTY AND, THE

1 HOUSING UNIT LOCATION OF THE PLAINTIFF WAS
2 STILL, K-POD, CELL/CUBICLE 6/B. C/O BURNS, A DEFENDANT
3 IN THIS ACTION COULD HEAR AND SEE EVERYTHING THAT
4 WAS GOING ON, ESPECIALLY, HOW THE PLAINTIFF WAS IN
5 EVERYWAY TRYING TO, AVOID CONFRONTATION. ONCE THE
6 OTHER HOUSING UNIT DETAINEE GOT TO CLOSE FOR
7 PLAINTIFF'S COMFORT, AND PLAINTIFF ADVISED THE, WANT
8 TO BE YOUNG GANG BANGER OF THE FACT THAT, IF
9 HE SO DECIDED TO COME ANY CLOSER TO THE PLAINTIFF
10 THE PLAINTIFF IS GOING TO SEE HIS AGGRESSION
11 AS A THREAT AGAINST HIS PERSON, AND, "KICK HIS BULLY
12 ASS FROM THE HOUSING UNIT, TO A MOUNTAIN ON
13 THE PLANET MARS". PLAINTIFF THOUGHT IT WAS STRANGE
14 HOW, C/O BURNS DID NOT IMMEDIATELY CALL 10-10 BACK-UP.
15 C/O BURNS, CALLS THE OTHER AGRESSER OUT TO THE BOOTH TO
16 ASK WHAT WAS GOING ON, AND NOT PLAINTIFF, NOR HIS WIT-
17 NESSES. WITHIN 3 MINUTES OF THIS ACTION, C/O BURNS
18 HAD PLAINTIFF (BYRD) REMOVED FROM UNIT TO AD-SEG
19 LOCK-UP, C/O BURNS DID THEN FILE A FALSE REPORT ON
20 THE MATTER. PLAINTIFF HAD HIS HEARING, FOUND
21 NOT GUILTY OF ALLEDGED SERIOUS ALLEGATIONS. THE
22 PLAINTIFF THEN APPEALED THE MINOR INFRACTIONS
23 AND, HAD THEM TOSSED, ALSO. DEFENDANT C/O BURNS, KNEW
24 HE WAS RESPONSIBLE FOR, THE UNLAWFUL LOCKUP OF THE
25 PLAINTIFF IN THIS ACTION. PLAINTIFF SEEKS DAMAGES
26 IN THE AMOUNT OF $10,000,000., FOR THE ACTIONS OF
27 THE DEFENDANT IN THIS ACTION:
28 "

E-FILED
Tuesday, 29 April, 2008  02:21:04 PM
Clerk, U.S. District Court, ILCD

## 9TH CAUSE OF ACTION

1. DEFENDANTS, OFFICIALS OF THE JEROME COMBS DETENTION CENTER
2. ON OR ABOUT, FEBRUARY 25TH, THROUGH, MARCH 12, 2007, DID WIFULLY
3. CAUSE AN INTERRUPTION IN THE PLAINTIFF'S LEGAL CONFIDENTIAL
4. CERTIFIED U.S. MAIL, LEAVING FROM THE SAME DETENTION
5. CENTER, KANKAKEE, ILLINOIS 60901, AND ADDRESSED TO: THE
6. HONORABLE JUDGE CLARK ERRICSON, KANKAKEE COUNTY CIRCUIT
7. COURT, KANKAKEE, ILLINOIS 60901. THIS CERTIFIED MAIL ARTI-
8. CLE # 7002-0510-0000-4233-9136, WAS NEVER DELIVERED TO THE
9. HONORABLE COURT, AND RETURNED TO THE PLAINTIFF, WITH THE
10. NOTATION, " RETURNED FOR $4.25, ADD'L POSTAGE". THE PROPER #
11. AMOUNT WAS CHARGED TO THE PLAINTIFFS, INMATE ACCOUNT
12. WHICH SHOWED, $5.00 (CERTIFIED MAIL FEE DEDUCTION). SOON THEREAFTER, THE
13. PLAINTIFF RECEIVED A HANDWRITTEN NOTE FROM AN EMPLOY-
14. EE STATING, " SAMUEL BYRD, YOU WERE ADVISED OF THE
15. PROPER WAY TO PREPARE YOUR CERTIFIED MAIL FORMS
16. AND HOW TO PLACE SAME ON ENVELOPES. SUBSEQUENTLY, YOUR
17. ENVELOPE, WILL NOT GO OUT." THE PLAINTIFF MADE THE
18. OFFICIALS WELL AWARE THAT, (1) "HE HAS BEEN DEALING
19. WITH SENDING CERTIFIED MAIL FOR OVER FOURTY YEARS; (2)
20. HIS ACCOUNT WAS CHARGED THE FULL POSTAGE; (3) THE PLAINTIFF
21. IS A FORMER EMPLOYEE FOR, THE UNITED STATES CONGRESSION-
22. AL POST-OFFICE, WASHINGTON, D.C. 20515, AND THAT THEY CAN
23. BE ASSURED THAT, WHAT THEY DID WAS, A MAJOR POSTAL
24. VIOLATION." THIS NOTE WAS SENT TO THE PLAINTIFF, FROM
25. A BERNIE BENSON, JEROME COMBS DETENTION CENTER.
26. FROM THAT DAY FORWARD, THE OFFICIALS ON THEIR OWN, STOPPED
27. TAKING PLAINTIFFS OUTGOING CERTIFIED MAIL. PLAINTIFF
28. DID BRING THIS MATTER TO THE JUDGES ATTENTION, ON RECORD, MARCH

1  2007, AT ONE OF HIS MANY HEARINGS, STATE COURT.

2  ENVELOPE IN QUESTION DID CONTAIN A MOTION BY THE PLAINTIFF

3  FOR, SUPPRESSION OF EVIDENCE, UNLAWFULLY SEIZED BY THE

4  BOURBONNAIS POLICE DEPARTMENT, BOURBONNAIS, ILLINOIS, THIS

5  PLAINTIFF HAD TO RE-SUBMIT ANOTHER COPY, WHICH WAS

6  THEN RECEIVED, AND GRANTED BY THE JUDGE, ESPECIALLY,

7  AFTER PLAINTIFF DRAFTED IN GREAT DETAIL THE OTHER

8  NAMED DEFENDANTS, WRECKLESS VIOLATION OF THE WARRANT

9  FOR THAT, "SEARCH AND SEIZURE OF HIS HOME". PLAINTIFF

10  WILL BE SUBMITTING EVIDENCE OF THIS AS WELL. THE

11  PLAINTIFF IN THIS ACTION SEEKS DAMAGES IN THE AMOUNT

12  OF $40,000,000., FOR THE ACTIONS CAUSED BY THESE NAMED

13  DEFENDANTS;

14                      10TH CAUSE OF ACTION

15  DEFENDANT C/O VENKE, DID WILFULLY CONSPIRE WITH, C/O

16  BERNS IN THAT, SHE SO ASSISTED DEFENDANT C/O BERNS IN

17  HIS FALSE REPORT OF THE ARGUEMENT BETWEEN, THE

18  PLAINTIFF, AND HIS AGGRESSER, INMATE WASHINGTON.

19  DEFENDANT C/O VENKE, BECAME SO CAUGHT UP IN, MAKING

20  PLAINTIFF'S LIFE AT THE DETENTION CENTER ONE OF

21  UNNECESSARY COMPLICATIONS THAT, EACH AND EVERY TIME

22  THERE WAS A CHANGE OF UNIFORMS, ON EXCHANGE DAY

23  OF EITHER, MONDAY-WEDNESDAY-FRIDAY, OR, TUE-THURSDAY-

24  OR SATURDAY, SHE WENT OUT OF HER WAY TO, PERSONALLY

25  CHANGE THE PLAINTIFFS SHIRT PULL-OVER SIZE FROM, 6X

26  TO, 4X OR 5X, SIMPLY BECAUSE SHE KNEW THAT, THE UN-

27  NECESSARY SIZE REDUCTION WOULD, CAUSE PLAINTIFF SEVERE

28  BACK PAIN, DUE TO INJURIES, TRYING TO PUT IT ON. THESE

1 ACTIONS WENT ON FOR MORE THAN FOUR MONTHS, AND
2 WITH, WANTON, RECKLESS, PREMEDITATED, DISREGARD
3 FOR, PLAINTIFF'S WELLBEING. PLAINTIFFS SEEKS DAMAGES-
4 IN THE AMOUNT OF $20,000,000, FOR THE ACTIONS CAUSED
5 BY THIS DEFENDANT, AS, EACH AND EVERY DEFENDANT
6 EMPLOYED BY THE KANKAKEE COUNTY SHERIFF'S DEPT,
7 THE BOURBONNAIS, ILLINOIS POLICE DEPT., THE STATE'S ATTY'S
8 OFFICE OF KANKAKEE COUNTY, ALSO ACTED INDIVIDUALLY
9 AND IN THEIR OWN OFFICIAL CAPACITY TO CAUSE THE
10 PLAINTIFF'S, PAIN / SUFFERING / VIOLATION OF HIS CONSTITUTIONAL
11 CIVIL LIBERTY, AND RIGHTS.
12                    IIIrd CAUSE OF ACTION
13 DEFENDANT STANDARD TITLE COMPANY, KANKAKEE, IL,
14 DID WILFULLY CONSPIRE TO ACCEPT WITHOUT THE FULL
15 KNOWLEDGE OF THE PLAINTIFF TO, HAVE TWO (2) SEP-
16 ERATE CONTRACTS FOR THE SALE, TITLE INSURANCE, HOME
17 OWNERS INSURANCE, MORTGAGE INSURANCE, WITH INSUR-
18 ANCE COMMITMENT NUMBER FOR POLICY'S FOR, THE PLAIN-
19 TIFF, AND THE ACTUAL PARTY THAT BOUGHT THE
20 RESIDENCE IN QUESTION OF THIS LAWSUIT, AND SOLD
21 BY DEFENDANT DEMARAH & HOMESTAR BANK. HOME @ THE
22 ADDRESS OF 1250 EAGLES BLUFF DRIVE, WAS SOLD DURING
23 MONTH OF DECEMBER, 2006. DEFENDANTS GREGG GIBSON
24 AND CO-DEFENDANT LLEWELYN, OF THE STANDARD TITLE CO.,
25 KANKAKEE, ILLINOIS WERE, WELL AWARE OF THIS AS
26 THEY PREPARED THE DOCUMENTS. PLAINTIFF SEEKS THE
27 AMOUNT OF $30,000,000, FOR THEIR WILFULL GROSS DECEIT
28 AGAINST HIS PERSON;

1            12TH CAUSE OF ACTION
2  DEFENDANTS BOB BRACKNEY, AND JASON SELLERS, DID
3  ACT AS, LOAN OFFICERS FOR THE PLAINTIFF IN THAT
4  THEY DID SECURE A LOAN FOR THE PLAINTIFF, IN
5  THE AMOUNT OF, $311,000, AND, INCREASED TO $370,000.,
6  FOR REHAB/CONSTRUCTION ON HOME FOR SALE TO THE
7  PLAINTIFF BY, DEFENDANT DEMARAH/HOMESTAR BANK
8  IN THIS ACTION. THESE DEFENDANTS DID CAUSE THE
9  PLAINTIFF TO FORWARD, $1500 CASH, VIA, MONEY GRAHAM WIRE
10  TRANSFER AND, REFUSED TO REFUND THAT AMOUNT, AFTER
11  IT WAS CLEAR THAT, PLAINTIFF WAS VICTIM OF ANOTHER
12  ELABORATE FRAUD, CAUSED BY DEFENDANT DEMARAH, AND
13  ONE SOURCE REAL-ESTATE AND FINANCINGS, BRACKNEY AND
14  SELLERS. ONE SOURCE REAL-ESTATE AND FINANCING IS NOW
15  A DEFUNCT CORPORATION, HOWEVER, DEFENDANT BOB
16  BRACKNEY, HAS KEPT HIS TELEPHONE NUMBERS, ACCORDING
17  TO HIM, VIA, TELEPHONE ON, MARCH, 2ND, 4TH, 7TH, 2008 AND
18  SO GIVEN, ALONG WITH HIS NEW ADDRESS OF: 5909 SO.,
19  WEST 28TH STREET, TOPEKA, KS. 66614. PHONE # AS, 1-785-273-6500
20  JUST AS IT WAS, DURING PLAINTIFF'S DEALING WITH THESE
21  DEFENDANTS. PLAINTIFF DOES SEEK DAMAGES IN THE
22  AMOUNT OF $30,000,000., FOR ACTIONS CAUSED BY THESE
23  DEFENDANTS NAMED IN THIS ACTION.
24  RB/K                    Signed Original
25  RB/V
26  RB/K
27  "                              Plaintiff
28  "

13th CAUSE OF ACTION

1

2   THAT DEFENDANT, DR. BALCUS, (SPELLING UNCERTAIN) DID WILFULLY

3   PROVIDE FALSE TESTIMONY, AT PLAINTIFF'S FIRST CIVIL TRIAL, ON HIS

4   STATE MATTER, INDICATING THE PLAINTIFF WAS UNFIT TO

5   STAND TRIAL. DEFENDANT DR. BALCUS NEVER TESTED THE

6   PLAINTIFF, AS PLAINTIFF MADE IT CLEAR WHEN HE GAVE

7   TESTIMONY @ THE PRESENTATION TO THE JURY THAT, "DR.,

8   BALCUS WAS VERY UNPROFESSIONAL IN HOW HE ATTEMPTED

9   TO HAVE WHAT IS SUPPOSED TO BE, A CONFIDENTIAL SETTING

10  WITH THE PLAINTIFF, OUTSIDE OF THE PRESENCE OF

11  THE CORRECTIONAL STAFF, FROM THE JEROME COMBS DET-

12  ENTION CENTER, AND AS WELL, OTHER DETAINEE'S." PLAIN-

13  TIFF INFORMED THE DEFENDANT, DR. BALCUS, THAT HE

14  NEEDED TO CLOSELY STUDY THE, HIPAA LAW AND THERE

15  WOULD BE NO INTERVIEW, NOR, AN EVALUATION. THE

16  JURY CAME BACK WITH THE VERDICT, MR. BYRD IS MORE

17  THAN FIT TO STAND TRIAL. MONTHS LATER, IN VIOLATION

18  OF PLAINTIFF'S PROTECTED RIGHTS, ISSUE WAS VISITED A

19  SECOND TIME, WHICH IS, "ABSOLUTELY PRECLUDED". IF

20  THE DEFENDANT HAD GIVEN THE PLAINTIFF A TEST

21  HE WOULD HAVE FOUND THAT, UNDER BEING TESTED

22  USING THE, WECHSLER ABBR SCALE OF INTELLIGENCE

23  (WASI); THE PLAINTIFF'S I.Q. SCORES ARE AS SO

24  FOLLOWS: FULL-4 IQ: 129 (SUPERIOR RANGE); VERBAL I.Q:

25  AFTER PLAINTIFF WAS UP FOR, TWENTY EIGHT HOURS; 116

26  (HIGH AVERAGE RANGE); PERFORMANCE I.Q: 136 (VERY

27  SUPERIOR RANGE); TRAIL MAKING RANGE TEST; TRAILS

28  A TASK: 37 SECONDS (NORMAL RANGE); TRAILS B TASK: 67 SECONDS

1   (NORMAL RANGE) AGAIN, BOTH AFTER BEING WITHOUT
2   SLEEP FOR, TWENTY EIGHT HOURS, THE PLAINTIFFS OTHER
3   SCORES HE WILL LET SPEAK FOR THEMSELVES, DURING
4   THIS TRIAL MATTER, AGAINST THE NAMED DEFENDANT, (DR.,
5   BALCUS) PLAINTIFF SEEKS DAMAGES IN THE AMOUNT
6   OF $20,000,000., FOR ACTIONS CAUSED BY THIS DEFEND-
7   ANT IN THIS MATTER. (RECORDS WILL BE PROVIDED OF
8   I.Q., TESTING, AT TRIAL).
9                    14TH CAUSE OF ACTION
10  DEFENDANT DR. SIMONE, DID GIVE FALSE TESTIMONY
11  AT THE PLAINTIFFS, 2ND HEARING ON FITNESS, TOTALLY CONTRARY
12  TO THAT OF THE PLAINTIFFS, 1ST TRIAL AS, HE WAS AWARE
13  THAT, THE PLAINTIFF WAS NAMING HIM IN THIS ACTION
14  FOR DAMAGES, HE FIRMLY ADVISED PLAINTIFF TO, GET
15  RID OF HIS DEFENSE COUNSEL, DEFENDANT BEAUMONT,
16  ALSO NAMED IN THIS ACTION. ONCE DEFENDANT DR. SIMONE
17  WAS AWARE OF THE FACT THAT THE PLAINTIFF TAPED
18  THE ENTIRE, 2ND VISIT WITH DR. SIMONE, HE REALIZED
19  THAT, HE HAD A PROBLEM IN THE 2ND COURT TESTIMONY
20  HE GAVE, UNDER OATH. DEFENDANT, DR SIMONE DID
21  ALTAR HIS TEST FOR I.Q., OF THE PLAINTIFF, IN THE
22  1ST MEETING, WITH PLAINTIFF, ALBEIT, HE DID NOT
23  ANTICIPATE THE PLAINTIFF WAS KEEPING ACCURATE
24  RECORDS OF HIS SIT DOWNS, WITH DR. SIMONE.
25  DEFENDANT, DR. SIMONES' OWN VOICE ON TAPE WILL
26  TELL THE STORY. PLAINTIFF SEEKS DAMAGES IN
27  THE AMOUNT OF $20,000,000., FOR ACTIONS CAUSED
28  BY THIS DEFENDANT.

1    CONCLUSION
2    THE PLAINTIFF SEEKS DAMAGES IN THE AMOUNT
3    OF $500,000,000.00, DUE TO THE INJURIES AND VIOLA-
4    TIONS AFFLICTED ON HIS PERSONS, BY THE DEFENDANTS
5    NAMED IN THIS ACTION, AND DEMANDS A TRIAL BY
6    JURY, IN THE UNITED STATES DISTRICT COURT FOR
7    THE CENTRAL DISTRICT OF ILLINOIS, URBANA DIVIS-
8    ION.
9    DECLARATION
10   THE FOREGOING IS TRUE AND CORRECT TO THE BEST
11   OF MY BELIEF OF WHAT I KNOW TO BE TRUE AND CORRECT,
12   UNDER THE LAWS OF THE UNITED STATES OF AMERICA.
13                         Signed ORIG  James R Begly M
14   EXECUTED ON THIS, 7TH, DAY OF MARCH, 2008   James R Begly M
15                                               Plaintiff
16   "
17   "
18   "
19   "
20   "
21   "
22   "
23   "
24   "
25   "
26   "
27   "
28   "

ATTN: CLERK OF THE UNITED STATES DIST COURT
CENTRAL DISTRICT OF IL.

ATTACHED HERETO, THE NAMES AND ADDRESS OF
THE DEFENDANTS, FOR PROCESS OF SERVICE, SUMM/COMPL.
(1) JEROME COMBS DETENTION CENTER DEFENDANTS;
1) NURSE, JEANNE FLAGEL; (2) %O NOLAN; (3) %O O'NEAL; (4) %O VENKE;
(5) %O MATTHEWS; (6) %O SGT. SHORNDORF; (7) %O LT. SMITHE; (8) %O BERNS;
(9) %O CARPENTERO; ADDRESS - 3050 JUSTICE WAY, KANKAKEE, IL,
60901. ALSO: EMPLOYEE (10) BERNIE BENSON, AT SAME ADDRESS.

ATTACHED HERETO, THE NAMES AND ADDRESS OF STATE OFFICIALS
AS DEFENDANTS, FOR PROCESS OF SERVICE OF SUMMONS & COMPLAINT
1) ASST. STATES ATTORNEY, KANKAKEE COUNTY, MICHAEL QUINLIN;
(2) ATTY., LAWRENCE S. BEAUMONT; (3) DR. SIMONE; (4) DR. BALCUS;
(5) DETECTIVE GREGG KUNCE, BOURBONNAIS POLICE DEPT.; (6) DONALD L.
DEMARAH; ADDRESS TO SERVE ALL DEFENDANTS - 450 EAST COURT ST.,
OFFICE OF THE CLERK OF THE COURT, 3RD FLOOR, KANKAKEE, IL.,
60901. IN THE ALTERNATIVE, PROCESS OF SERVICE WILL
BE ACCEPTED AT THE STATES ATTORNEY'S OFFICE FOR ALL, AT
SAME LOCATION, SAME FLOOR.

ATTACHED HERETO, NAMES AND ADDRESS OF COMPANY'S, AND
OR INDIVIDUALS AS DEFENDANTS: (1) HOMESTAR BANK, ADDRESS
3 DIVERSATECH DRIVE, MANTENO, ILLINOIS 60950.

ATTACHED HERETO, NAMES AND ADDRESS OF COMPANY'S AND IND-
IVIDUALS, AS DEFENDANTS: (1) BOB BRACKNEY; (2) JASON SELLERS;
(3) ONE SOURCE REAL ESTATE AND FINANCE; 5909 S.W. 28TH STREET,
TOPEKA. KANSAS 66614, Tele. (1-785-273-6500)

ATTACHED HERETO, NAMES AND ADDRESS OF ADD'L COMPANY'S
AND INDIVIDUALS, AS DEFENDANTS: (1) STANDARD TITLE COMP.,
ADDRESS: 215 SOUTH SCHUYLER AVE., KANKAKEE, ILLINOIS 60901
(2) KAREN LLEWELYN; (3) GREG GIBSON. ~~(815)~~ 1-815-933-8617 ⊕
FAX

# LITCHFIELD
## CAVO LLP
**Attorneys at Law**

WRITER'S ADDRESS:
420 Lexington Avenue
Suite 1750
New York, NY 10170
(212) 818-0139
(212) 434-0105 fax
email: davila@litchfieldcavo.com

# Facsimile Transmittal

| | | | |
|---|---|---|---|
| **To:** | Per Instructions from Milon Musyck | **Fax No.:** | *815-928-8876* |
| **From:** | Danette Davila, Paralegal<br>Litchfield Cavo LLP<br>Direct Line: 212-818-0139 | **Date:** | October 18, 2006 |
| **Re:** | | | |
| **CC:** | | | |
| | | **Pages:** | 2 |

X **Urgent**   x **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

---

*Don Damroth his full cash settlement
for $46,700 and cancell investment on
Concerts.*

*4 X $10,000 clip
1 X $5,000 clip
17 X $ 100 dollar bills*

*Samuel R. Byrd Jr.
President, Milon Musyck
Inc.*

*$46,700 for IRS Purposes and awaiting return of Check #1011, $36,920
PART STUB
See payees signature on Payroll adjustment form attached, as
receiving cash payment, in full, before concerts.    2:07 P.M. Central Standard
Time*

Chicago • Hartford • Boston • New York • New Jersey • Tampa • Milwaukee

www.litchfieldcavo.com

*PLAINTIFF EXH #1
DENOMINATION OF CASH BREAKDOWN
PAID TO, DEFENDANT DONALD L. DAMROTH, FROM
SAMUEL R. BYRD, JR.*

# PAYROLL ADJUSTMENT FORM

ENT. NO.    CO. NO.

DATE 9/1/16

EMPLOYEE NUMBER 10-8-26

NAME Don BEMARAH

EARNINGS:

| DESCRIPTION CODE | HOURS | AMOUNT | CHECK NO. |
|---|---|---|---|
| REGULAR 01 | | | |
| OTIME 02 | | | |
| SALARY 07 | | 46,700.00 | |
| OTHER 08 | | | |

GROSS PAY ★ 1,0,15,00 CASH PAY 1099 46,700.00

TAXES/DEDUCTIONS:

| DESCRIPTION CODE | AMOUNT |
|---|---|
| FICA FI N/A | 3641440 |
| FED WT FN N/A | 171360 |
| STATE ST N/A | 138800 |
| MISC. ADVNCE | |
| 99 N4 | |

PRECALC N/A   MANUAL

NET PAY 35447.60 N/A

VOID

**Handwritten note:**

PLAINTIFF EXH #2
ADJUSTED PAYROLL FORM FROM
PLAINTIFF'S CORP, SHOWING 1099 CASH PAY
TO DEFENDANT DONALD L. DEMARAH, INCLUDING
SIGNATURE OF DONALD L. DEMARAH, ACCEPTING
NO TAXES WITHHELD!

**NORTH FORK BANK OUTGOING WIRE TRANSFER FORM**

*North Fork*

### GENERAL INFORMATION

DATE OF TRANSFER: Oct 14, 2006    BRANCH/DEPT NAME:

TEMPLATE NUMBER:    TEST KEY NUMBER:

### ORIGINATOR INFORMATION

AMOUNT TO BE WIRED: $39,900—    DEBIT ACCOUNT NO: CASH WALK IN U.S.D

BY ORDER OF: 86-1095352 EIN#   Milon Musick Inc. Samuel Robert Byrd, Jr. President/Owner

ORIG ADDRESS: NEW YORK CITY    CITY/STATE: NEW YORK 10170

### BENEFICIARY INFORMATION

BENE NAME: Don Demarah Construction    BENE A/C NO: 000010-0719220010-500867

BENE ADDR: Manteno    CITY/STATE: ILLINOIS

ADD'L INFO: On Post-Dated Check #1011 and Loan to Beneficiary, Until Concert 2007   #36,920 (Only)   MARIAH CAREY

### FINANCIAL INSTITUTION INFORMATION

LOCATOR 50-CN37

RECEIVING BANK: NATIONAL CITY 425 MAIN STREET NW    ABA NO: 071921891

ADDRESS: BOURBONNAIS    CITY/STATE: ILLINOIS, 60914

BANK TO BANK INFO: DEPOSIT INTO ACCT OF S. Robert Byrd, #113787881

BENEFICIARY BANK: NATIONAL CITY   Tele # 1-815-935-5882

ADDRESS: BOURBONNAIS    CITY/STATE: ILLINOIS, 60914

INTERMEDIARY BANK: NORTHFOLK BANK, 1001 Ave of the Amer NYC, N.Y.    ABA NO: 021407912

### AUTHORIZATION

ORIGINATOR SIGNATURE: S Robert Byrd    DATE: SATURDAY 2006, 14th Oct

ORIGINATOR NAME (PRINT): Samuel Robert Byrd, Jr / Milon Musick Inc.

BANK AUTHORIZATION:    TITLE:

BANK AUTH. (PRINT):

REVIEWED BY (IF REQUIRED):

**FOR BRANCH USE ONLY:**

INSTRUCTIONS RECEIVED VIA: ☐ TELEPHONE   WITH TEST WORD/ WITHOUT TEST WORD

☑ WALK IN   ☐ LETTER   ☐ FAX

CUSTOMER CALL BACK INFO: 702-378-2351

FEE TO BE CHARGED: $ 50—

**NOTE:** All permanent fee waivers must be approved by the branch manager and provided in writing to the Wire Room.

05-0207-0900B (7/97) BB

*(right margin handwritten:)* WILL GO OUT MONDAY OCT 16, 2006 9AM

*(handwritten at bottom:)*

PLAINTIFF'S EXH #③
BANK WIRE CANCELLATION TO, DONALD L. DEMARAH,
DUE TO HIS NOT WANTING TO REPORT TO IRS/DEPT. OF
TREASURY, DEFENDANT REC'D #461700, 4 DAY'S LATER.
PLAINTIFF REPORTED TO, IRS/DEPT OF TREASURY.

DEMARAH PAYOUT OF CASH IN HAND. NO REPORTING, PER HIS REQUEST DUE TO AMOUNT OF PAYOUT. WILL NOTIFY I.R.S. ANYWAY.
PAYMENT STOPPED ON CHECK #1011 LOAN TO DEMARAH, DUE TO HIS ATTEMPT to CASH EARLIER than AGREED DATE OF, OCTOBER 16, 2006.
DEMARAH INDICATED HE WOULD RETURN MY STOP PAYMENT CHECK & FINISH MY HOUSE FOR PURCHASE AND MOVE IN BY, NOVEMBER 7, 2006 AND WHEN HE RETURNS FROM, JAMAICA ON ASHLEY's WEDDING.
WILL RETURN MY MONEY, AFTER FINAL CONTRACT NEGOTIATION FOR, MARIAH CAREY CONCERT, SUMMER OF 2007, LAS VEGAS VENUE's. DEMARAH's $12,000 INVESTMENT to APPLY FOR THAT TOUR, "ONLY".

ADP ADVISES TO: DEDUCT ALL TAXES IF PAYMENT IS APPLIED FOR ANY WORK IN, STATE OF ILLINOIS, NO STATE TAXES OBVIOUSLY FOR WORK DONE IN, STATE OF NEVADA. ONLY FEDERAL TAXES.

PLAINTIFF EXH #9 BACK OF WIRE CANCELLATION.



PLAINTIFFS EXH #5

CK # 1011, ALTERED, BY STATE
ATTORNEY / HOMESTAR BANK / DEMARATH /
BOURBONNAIS POLICE.
THIS COPY GIVEN AS
412 DISCOVERY, FROM STATE.
(SEE COPY OF SAME CK# 1011, FORWARDED
FROM PLAINTIFF (BYRD'S) FORMER
BANK, NATIONAL CITY), WITHOUT
OBVIOUS, ALTERATIONS.
DEFENDANTS BREACH OF AGREEMENT TO
HOLD CHECK 5 DAYS.

# F A X

**National City.**

20220 S. LaGrange Rd.
Frankfort, IL 60423
(815) 806-2630 phone
www.nationalcity.com



_____ page(s) total
**Includes cover page**

To: Charles
Fax number: 847-489-4943

From:
Fax number: (815) 806-2645

Date: 2 26 08

Regarding: S. Robert Byrd

_"We CARE about doing what is right for our customers!"_

**Comments:**

PLAINTIFFS EXH #6
FAX CONFIRMATION OF STOP PAYMENT
OF LOAN TO, DEFENDANT DONALD L. DEMBROW,
Due TO BREACH OF AGREEMENT TO, HOLD CHECK.



PLAINTIFF'S EXH #7

COPY OF SAME LOAN CHECK TO PLAINTIFF'S
DEFENDANT DEMARAH, FROM PLAINTIFF'S
FORMER BANK SHOWING PLAINTIFF'S STOP PAYMENT
AND, DIFFERENCE BETWEEN PLAINTIFF'S BANK COPY
AND, STATES 412 ALTERED COPY. (SEE EXH #8, ATTACHED.)



PLAINTIFF'S EXH #8 COPY
PLAINTIFF'S
SHOWS, NO ALTERATIONS

03/05/08, 09:50 AM
> Primary Care Physician notes
> Axis III

1. Hypertension- right 140/80, heart rate 58
   Continue with Enalapril 5 mg daily

2. Chronic low back pain, secondary to motor vehicle accident (1974)
   Cancel physical therapy per patient request after discussing with his Medical Doctors from
   Cornell University

3. History for thermal injury (liquid nitrogen) from incident that occurred in 1985 while under
   the custody of the US marshall in Washington DC - Hyperpigmented areas (serpentine
   figure)at right mid-back area. No other lesions noted at adjacent areas.

Dr. Nidea.

Plaintiffs EXH #9 → Injuries from assault,
Doctor's Notes of Byrds which state
denied ever happened to plaintiff, and, after
the Jerome combs Detention Center, state officials, former
Defense attorney, Lawrence Beaumont, Destroyed evidence
of same, during state proceedings.
(See attached photo)

| Date - Time Type - Discipline | Enter date, time, type of note and discipline of author in left column. * Date entered in ID Box should match date of first entry on each Progress Note form. Progress Notes are to be legible and written in black ink. |
|---|---|
| 3/04/08 Psych/Nsg | PT. will be offered prn ativan 1mg po prn 3 X per (no more than 8 too mg a day) for anxiety / agitation. |
| 03/05/08 0950am | PCP Notes Actions 1) HTN - (R) 140/80 HR 58 Continue c Enalapril 5 mg/d. 2) Chronic LBP 2° A MRA (9-7-06 Cancel) PT per pt's request p discussing c his MD's from Cornell University. 3) s/p thermal injury (liquid nitrogen) from incident that occurred in 1985 while under the custody of the U.S. marshall in Washington DC — hyperpigmented areas (serpentine figure) @ (R) mid-back area. No other lesions noted @ adjacent areas. |

(continued on reverse)

"Type" abbreviations
SP-PREC      BEH-OBS
TR-INTER     EVENT

"Discipline" abbreviations
PSYCH - (Psychiatrist)      PSYOL - (Psychologist)
MD - (Physician)            SW - (Social Worker)
MHT - Mental Health Technician

AT - (Activity Therapist)
REHAB - (Rehabilitation Staff)
MHS - Mental Health Specialist

ELGIN MENTAL HEALTH CENTER
Progress Notes

Plaintiff's 8X11 #10
(See attached photo)

DOC-1201, Issued 03/07/96
Purge: 3 months

| Recipient Name: | Byrd Samuel |
|---|---|
| Date of Birth: | 04-12-1952    Sex: Male |
| DMHDD ID#: | 878473 |
| Facility Name: | EMHC |
| Unit: | 4561 G    * Date of First Entry: |



Plaintiffs EXH # ⑪
INJury of Plaintiffs Byrds
Back, State claimed Never Happened, Dueing 1985.
(see Doctors Notes)                    11-8-07

            Sam Byrd's back.

Due

...1925 To Watergate, June 17, 1972
E. Howard Hunt, Jr, & Gettmers plead guilty in Jan. 1973. Liddy-McCord)
Formality General    (Nixons aides during presidency)  Found Guilty, Jury
1975 J.N. Mitchell & J.D. Ehrlichman, H.R. Haldeman,

← CARL/Bob
Burnstein & Woodward head witchhunt on Nixon, via, Washington Post
Nixon Has Cox Fired.1973, Refuses to give tapes, Impeachment Starts,
Nixon Gives Tapes Up In, Late 1973 To John J. Sirica, U.S. Dist Court Judge
Nixon Resigns on, August 9, 1974, 29 Days Later, Gerald Ford Pardons
Nixon, as agreed in phone conversations Ford to Robert V. Rita, about
Roughly lyr earlier on his call To the Former Postmaster, and
convicted Felon, AND, Former Boss To, S.R. Byrd, Jr.

03-19-08, 08:50 AM
Primary Care Physician notes
Patient: Samuel Byrd
       ID#: 878473

Axis III
  Weight: 203.5 lbs

1. Hypertension
   Right blood pressure 160-170/100 mmHg, HR 54.
   Patient states that he "feels great" this AM, and voiced that he does not want to take the
Amlodipine that was ordered.
   Patient states that his high blood pressure is due to from different factors- sinus infection,
ongoing court case, being up and about and other misc. reasons.
   Medical education and counseling provided.
   Will monitor status on prn basis and discuss above with the treatment team.

2. Acute sinusitis
   Continue with Amox/Clavulanate 875 mg orally two time a day with food for 14 days.
   Await CT scan of sinus.

3. History for handcuff injury to right antero-medial wrist area; healed scars at described area.

4. History for thermal injury to antero-lateral aspect of left hand (area between thumb and index
finger), secondary to "cigar" while in custody (same as for (3); healed scar at described area.

Dr. Nidea.

*Plaintiffs Exht #12*

*Dr. Nidea makes notes of Plaintiff Byrds injuries, after further examination.*

*"Defendants" County Jail officials, State officials, Former Defense Atty, stated never Happened.*



PLAINTIFF's EXH#13
CT SCAN OF PLAINTIFFS SINUS ILLNESS:
Jerome combs Defendants, State official Defendants, For
Defense attys Claimed, PLAINTIFF HAD NO sinus infections, etc...,
AS CYST and poLips, were Found, ALong with other physical
problems, requiring Necessary surgery, soon.



PLAINTIFF EXH #(14)
CT SCAN IMAGES OF BYRD, SHOWING
Further INTERNAL SINUS/EAR INJURIES - INFECTION.



#1 (42 images)



#2 (2 images)



#3 (102 images)



#4 (2 images)

Plaintiffs Exit #14
CT Scan Images of
Brain/Sinuses.

Michael P. Schwartz, M.D. Medical Director
Kenneth P. Sullivan, M.D.FACR
Patrick F. Para, D.O.
Jacob S. Ecanow, M.D.
Brian T. Schwartz, M.D.

**PROVENA SAINT JOSEPH HOSPITAL**
77 North Airlite
Elgin, IL.

Provena St. Joseph Hospital
## DIAGNOSTIC IMAGING SERVICES

**NAME:** BYRD,SAMUEL
**PHYSICIAN:** Elgin Mental Health
**UNIT # :** DB00754721
**ACCT #:** DB0058162615

**DOB – AGE - SEX:** 04/12/1952 - 55 - M
**ADMIT DATE:**
**DIS DATE:**
**LOC/RM/BED:** C01CTS -

**DIAGNOSTIC IMAGING**
CT/SINUSES W/O CONTRAST : 0325-0009
**DATE PERFORMED: 03/25/08**
REPORT # : 0325-0229

**INDICATION:** Headaches and pressure.

**FINDINGS:** Coronal and axial scanning through the paranasal sinuses was performed. The frontal sinuses are clear. There is mild mucosal thickening in the ethmoid air cells and maxillary sinuses. There are retention cysts or polyps in the maxillary sinuses. The ethmoid air cells are clear. The osteomeatal units are clear. There is a large area of concha bullosa on the left side. The nasal septum is deviated slightly to the right.

**IMPRESSION:**
Paranasal sinus disease as described. No air/fluid levels are seen.

DICTATED: Jacob Ecanow M.D.

<<Signature on File>>

_____
Jacob Ecanow M.D.
03/26/08 0800
**DRAFT UNTIL SIGNED**

S: Signed
D: 03/25/08 1720
T: 03/25/08 1742 PAQ
REPORT#:0325-0229

CC: ASSOCIATED IMAGING; Elgin Mental Health

**Additional copy**

1 of 1
Print time: 03/26/08 at 1020

Plaintiffs Exit # 15
CT Scan, Picked up
What X-Rays DID NOT.
Surgery is necessary.
(SEE ATTACHED IMAGES)
Suggest same on spine/leg
Injury, 1974.

## Psychological Assessment Summary

**Patient:** Samuel Byrd (OMH ID #: 870474)

**Wechsler Abbreviated Scale of Intelligence (WASI):**

**Full-4 IQ:** 129 (Superior range)
**Verbal IQ:** 116 (High Average range)
**Performance IQ:** 136 (Very Superior range)

**Trail Making Test:**

Trails A task: 37 seconds (Normal range)
Trails B task: 67 seconds (Normal range)

No difficulties noted with visual scanning, simultaneous processing, or sequential processing.

**Letter-Number Sequencing (Wechsler Adult Intelligence Scale-Third Edition subtest):**

Scaled Score = 17 (approximately 99th percentile)

**Clock Drawing Test:** Within normal limits; no spatial neglect or signs of early dementia noted.

**Beck Depression Inventory:** Total Score = 2; Minimal Level of Depression.

_____
Glenn P. Doyle, M.A.
Psychology Intern

_____
Mazhar A. Khan, Ed.D.
Licensed Clinical Psychologist

*Plaintiff EXHIBIT # (6)
I.Q. Testing of Plaintiff on or about, March 2008.*
*Results*



**Weill Cornell Medical College**

⅃ **NewYork-Presbyterian Hospital**
⅂ **Weill Cornell Medical Center**

Mukesh Prasad, M.D., F.A.C.S.
Department of Otorhinolaryngology
1305 York Ave., 5th Floor
New York, N.Y. 10021

Billing Office-
435 East 70th St., Suite 2E
New York, N.Y. 10021

Billing Telephone: (212) 746-2032
Billing Fax: (212) 746-8549

## FAX COVER SHEET

Date: 03/05/08

✳To: Samuel Robert Byrd

Fax: (347) 429-4943

From: Farah T. Roche
*Senior Medical Secretary/Account Administrator for*
*Dr. Mukesh Prasad*

Re: Medical Records

Total Pages (including cover): 5

Notes:
Please confirm receipt.

✳ ~~CONFIDENTIAL~~ ✳

THE INFORMATION CONTAINED IN THIS FACSIMILE IS PRIVILEGED AND CONFIDENTIAL
INFORMATION INTENDED FOR THE SOLE USE OF THE ADDRESSEE. IF THE READER OF THIS
FACSIMILE IS NOT THE INTENDED RECEIPENT, YOU ARE HERBY NOTIFIED THAT ANY
DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY
PROHIBITED. IF YOU RECEIVED THIS FAX IN ERROR, PLEASE NOTIFY THE SENDER LISTED
ABOVE.

Plaintiff's EXH# ⑰ THRU ⑳ sinus history. These
Doctor's records showing Byrd's comes Defendants, state
same records, Destroyed by, Jerome
Defendants, Form attorney, Defendant.

| WEILL **CORNELL** PHYSICIANS | **Provider:** Muke sh Prasad, MD **Dept:** Depa tment Of Otorhinolaryngology **Address:** 1305 YORK AVENUE, 5TH FLOOR New York, New York 10021 | **Patient:** S.Robert Byrd **MRN:** 3075538 **DOB:** 04/12/1952 (51 year old) **SEX:** Male **Visit Date:** Jan 12, 2004 |
|---|---|---|

**Encounter Summary**

Addended By: Mukesh Prasad, MD on: Mon Jan 12, 2004 5:28 PM

**Documentation Notes**
Addended by: PRASAD, MUKESH on: 1/12/2004 5:28:51 PM

History of the Present Illness

Robert Byrd is a pleasant 51 year old male whose symptoms began in 1995. At that time, he noted difficulty reaching high pitches with singing. He again sought care recently for chronic sinusitis for which he will be undergoing sinus surgery in Las Vegas. He also complained of intermittent tinnitus in the right ear with no hearing loss or vertigo. He underwent a surgery for a laryngeal cartilage cyst, which was benign, removed through an external approach. Of historical note, he has no smoking history. Of historical note, he was evaluated by a physician in Las Vegas in the Fall of 2003 and diagnosed with laryngopharyngeal reflux and started on prevacid and nasonex. On his 11/26/200 evaluation, he reported taking the prevacid and the allegra, with minimal changes to his voice, with some globus sensation. He complained of increased sinus pain which was exacerbated by flying and lying supine. He also reported pers stent tinnitus. He was found to have 1) laryngopharyngeal reflux, 2) chronic sinusitis with a deviated nasal septum, bilateral inferior turbinate hypertrophy, 3) snoring, with possible sleep apnea, and 4) persistent tinnitus. I recommended that he he 1) continue bid prevacid, 2) continue allegra, and forward his sinus CT's to this office, and undergo a CT of the sinuses, 3) undergo the sleep study, and 4) seek consultation with Thomas Murray to evaluate his speech capabilities (305-9718). He underwent a CT (11/26/2003), which I reviewed, revealing deviation of the nasal septum, variable degree of mucosal thickening in many sinuses. He underwent a sleep study (12/9/2003), which I reviewed, revealing mild OSAHS exacerbated to a moderate level by REM sleep (AHI of 21/hour with desaturations to 85%). He underwent a CAE (1/12/04), which I reviewed, revealing mild symmetric SNHL. On his 12/1/2003 evaluation, he reported persistent difficulties with his sleep, with occasional frontal sinus pain, worsened with flying, with persistent tinnitus. The patient reports associated signs and symptoms of no fever chills, nausea, vomiting, dysphagia, odynophagia, otorrhea.

Modifying Factors: None
Review of the Meds, PMH, and PSH, and ROS demonstrated no change since the patient's visit on 10/27/03.
This represents an established problem, which is stable.

Physical Examination

Today, a complete examination of the head and neck including cranial nerves III-XII, an otoscopic examination of the ears, assessment of the nasal mucosa, septum, turbinates, lips, teeth, gums, oral pharynx, and pharyngeal walls was performed. Also examined was the neck for evidence of thyroid abnormalities, masses, symmetry and crepitus. Evaluation of the head and face for overall appearance, scars, salivary gland masses, lesions and facial strength was undertaken. Findings on the physical examination included:

General examination revealed normal appearance, normal communication.
Facial evaluation demonstrated no scars, lesions, no pain on palpation, normal salivary gland, normal facial strength.

*Plaintiffs EXH #18*

Otologic evaluation revealed normal pinna and external auditory canal, normal
tympanic membrane, normal pneumo-otoscopy, normal gross hearing.
Ocular examination showed extraocular motion intact with pupils reactive to light,
no nystagmus, normal conjunctiva and sclera.
Rhinologic examination was remarkable for a deviated nasal septum, bilateral
inferior turbinate hypertrophy, normal mucosa, normal mucous.
Oral evaluation revealed tonsillar hypertrophy, veiling of the soft palate, normal
tongue and buccal mucosa, normal pharynx.
Attempted mirror examination of the nasopharynx and larynx was suboptimal secondary
to prominent gag.
An examination of the neck revealed normal temporomandibular joints, no mass,
crepitus, deviated trachea, normal thyroid, no lymphnodes.
Neurological evaluation illustrated CN III-XII to be intact, the patient alert and
oriented to person, place and time, normal mood and affect.


Assessment and Plan

     In short, Robert Byrd is a 51 year old male with  1) laryngopharyngeal
reflux, 2) chronic sinusitis with a deviated nasal septum, bilateral inferior
turbinate hypertrophy, 3) snoring, with obstructive sleep apnea, and 4) persistent
tinnitus.  I have recommended that he 1) continue bid prevacid, allegra, and 2)
continue consultation with Thomas Murray to evaluate his speech capabilities (305-
9718), and when able, would proceed with sinus surgery, as well as intervention for
his sleep apnea, including: septoplasty, submucosal resection of the inferior
turbinates, total ethmoidectomy, maxillary antrostomy, and frontal sinus
exploration, with a uvulopalatopharyngoplasty; all done on 2 different surgeries,
if he fails CPAP therapy in Nevada.  At this juncture we will discuss the need for
any further intervention.



Mukesh Prasad, M.D.


Previous Version




## Diagnosis
1. Esophageal Reflux [530.81]
2. Chronic Sinusitis NOS [473.9]
3. Voice Disturbance NEC [784.49bq]
4. Swelling in Head & Neck [784.2]


## Order Summary
**Orders**
1. Laryngoscopy,Flexible Fiberoptic,Diagnostic [31575]
**Medications**
1. Prevacid 30 MG OR Cpdr, **Sig:** 1 Capsule Bid Before Eating For 2 Weeks, Then Qd, **Disp:** 60, **Refills:** 0
2. Allegra 180 MG OR Tabs, **Sig:** 1 Tab Po Qd, **Disp:** 30, **Refills:** 3


| **Level of Service** | **IDX Visit Number** | **LOS Modifiers** |
|---|---|---|
| OFFICE/OUTPT VISIT,EST,LEVL III [99213] | 4697336 | SIGNIFICANT SPRTLY IDABLE EVAL & MGMT ON SAME DAY BY SAME PROV [25] |


**SmartForms Filed During this Visit**

Plaintiffs EXH #(19)

Byrd, S.Robert (MR # 3075538)

Flexible Fiberoptic Laryngoscopy

Referring Physician Copy

Plaintiffs Exh # 20

CLINICAL HISTORY:    R/O sinusitis.

ORDERING PHYSICIAN: Anthony,Nidea

RADIOLOGIST INTERPRETATION:

SINUS SERIES:

Four images are submitted.  There is asymmetric opacification left maxillary
sinus compared to the right.  The remaining paranasal sinuses appear well
aerated.  If clinical condition warrants, CT sinuses is recommended for further
evaluation.

IMPRESSION/CONCLUSION:

Suspect bilateral maxillary sinus disease, greater on the left.   PFP/km

Patrick F.Para, DO     Radiologist

Physician Review

Date/Initials

X-Ray Film Read:  2/15/2008
Report Transcribed but not read:  2/19/2008

Elgin Mental Health Center

Radiology Examination Report

*Plaintiff's EXH #(31)*
*X-Ray RESULTS. C.T. SCAN PICKED*
*UP, WHAT X-RAYS DID NOT.*
*(SEE ATTACHED CT SCAN)*

| | |
|---|---|
| Patient Name: | BYRD          ,SAMUEL |
| Date of Birth: | 4/12/1952          Sex  M |
| DMHDD ID: | 878473 |
| Facility Name: | Elgin Mental Health Center |
| Unit/Subunit: | FTP F&G |
| Date Completed: | 2/19/2008 |

CLINICAL HISTORY:   Chest: R/O TB.  Lumbar Spine:  Low back pain.

ORDERING PHYSICIAN: Anthony,Nidea

RADIOLOGIST INTERPRETATION:


CHEST:


There are no prior studies for comparison.  Two views of the chest with a
repeat lateral view are submitted.  Cardiac silhouette size and pulmonary
vascularity are appropriate in appearance.  No infiltrate, effusion,
pneumothorax or fibrocavitary lesions are identified.

LUMBAR SPINE:


Five images are submitted.  There are five lumbar segments.  There is no
evidence of spondylolysis or spondylolisthesis.  Osseous matrix is appropriate
in radiographic appearance.  There is no significant scoliosis.  There is mild
disc space height and narrowing end plate sclerosis and spurring L4-L5,  to the
lesser extent L5-S1.

IMPRESSION/CONCLUSION:


Chest:  No evidence of active infiltrate.


Lumbar Spine:  Evidence of mild degenerative disc disease L4-L5, L5-S1.  No
acute osseous pathology is identified.  PFP/km




                        Patrick F.Para, DO     Radiologist



                Physician Review
                                        Date/Initials

X-Ray Film Read:  2/22/2008

Report Transcribed but not read:  2/25/2008


Elgin Mental Health Center

Radiology Examination Report

*Plaintiff Exh #22*
*X-rays of Plaintiff, X-ray's and*
*MRI shows, major injury*
*scars, down played by the*
*Defendants Jerome combs, etal.*

| | |
|---|---|
| Patient Name: | BYRD          ,SAMUEL |
| Date of Birth: | 4/12/1952              Sex M |
| DMHDD ID: | 878473 |
| Facility Name: | Elgin Mental Health Center |
| Unit/Subunit: | FTP F&G |
| Date Completed: | 2/25/2008 |

**E-FILED**
Tuesday, 29 April, 2008  02:22:58 PM
Clerk, U.S. District Court, ILCD

# *Elgin Mental Health Center*
# *Speech/Language/Audiology Screening Report*

*Event Date:*  2/29/2008

**AUDIOLOGY INFORMATION:**

*Date of Hearing Screening:*  2/28/2008                *Recomend Date of Re- Screening:*

*Results of Hearing Screening:*  FAIL

*Hearing Evaluation:*                *Results of Hearing Evaluation:*

*Recommended Date of Re-Evaluation:*  3/28/2008

*Deaf/Hearing Impaired:*  No        *Sign Language Interpreter:*  No

*HA User:*  No        *Ear:*        *Battery Size:*

*Type of Hearing Aid:*

**SPEECH/LANGUAGE INFORMATION:**

*Speech/Language Screening:*  2/28/2008

*Results of Speech/Language Screening:*  PASS        *Rec Re-Screening:*  2/28/2011

*Non-English/Limited English:*  No    *Language Spoken:*        *S/L Interpreter:*  No

*Speech/Language Evaluation:*        *Recommended Date of Re-Evaluation:*

*Results of Speech/Language Evaluation:*

*Enrolled in Treatment:*  No        *Discharged from Treatment:*

*Hearing and Speech Advanced Specialist*        *Heidi Wiseman,* M.S. CCC-A

Heidi Wiseman, M.S., CCC-A



Elgin Mental Health Center

Speech/Language/Audiology

Screening Report

| Recipient Name : | BYRD, SAMUEL | |
|---|---|---|
| DOB: 4/12/1952 | Sex: | M |
| ID#: 878473 | Unit: | 4561 |
| Facility EMHC | Date: | 3/12/2008 9:18:10 AM |

*DOC 1630*

*Revised 01/07/2005*

*Purge: Never*

**File in Psychosocial Assessment Section**

Plaintiffs Exit #(23)
Jerome Combs Defendants; State
of Illinois Defendants, Former Defense
attorney Defendant; Indicated, No
Hearing difficulty of, Plaintiffs

CONFIDENTIAL
INFO FOR, LENDER
& CLIENT "ONLY".
VIOLATION IS SUBJECT
TO CIVIL AND CRIMINAL
ACTION.

FAX TO:
1-785-273-6510
ATTN: BOB
PLEASE REFUND
THE AMOUNT THAT
WAS PAID, NEVER
CLOSED.
GOOD FAITH ESTIMATE
ATTACHED

MONDAY
11/33 A.M.
COPY GIVEN TO ME

PLAINTIFFS EXH# 84-85
MONEY NEVER REFUNDED TO
PLAINTIFF, BY DEFENDANTS, SELLERS and
BRACKNEY, LOAN OFFICERS FOR
Home DEFENDANT DEMARA D, Breached
ON.

---

**MoneyGram**

CUSTOMER COPY/COPIA DEL CLIENTE

JEWEL/OSCO # 3161          /FF
453 MAIN ST
BOURBONNAIS, IL 60914
Phone/Teléfono: 815-935-0585

MONEYGRAM® SEND/ENVÍO

THIS TRANSACTION IS SUBJECT TO THE
TERMS AND CONDITIONS ON THE MONEYGRAM
RECEIPT HOLDER. /
ESTA TRANSACCIÓN ESTÁ SUJETA A LOS
TÉRMINOS Y CONDICIONES QUE VIENEN EN
LA FORMA DE RECIBO.

77048316131614663100851600
Date/Fecha: 07/31/2006 Time/Hora: 11:32 AM
Destination/Destino: United States
Service Type/Tipo de Servicio:
Standard Delivery/Entrega Estándar

Sender Information/
Información de la
persona que envía
SAMUEL R. BIRD
Phone/Teléfono: 702-378-2351

Receiver Information/
Información de la
persona que recibe
JASON SELLERS

Complimentary Phone Call/
Llamada Telefónica de Cortesía
Dial/Marque   XXXXXXXX
---> PIN/PIN   XXXXXXXX

See receipt holder for instructions/
Para instrucciones lea el sobre que
contiene su recibo.

*PAGE Lo)*

---) Reference/Referencia # 67830606

Amount Transferred/
Cantidad del Envío          $  1,500.00
Consumer Fee/
Cargos Consumidor           $     75.00
Discount/Descuento          $      0.00
Total/Total                 $  1,575.00

**Collect/**
**Cantidad Cobrada**        $  1,575.00

Exchange Rate/Tipo de Cambio
---)        1.000000

Amount To Be Received/
Cantidad que Recibirán
---)    1,500.00 (USD)

## Currency Exchange

IN ADDITION TO THE CONSUMER FEE,
MONEYGRAM ALSO MAKES MONEY WHEN IT
CHANGES YOUR DOLLARS TO PESOS OR OTHER
FOREIGN CURRENCY.  PLEASE SEE THE ATTACHED
RECEIPT JACKET FOR MORE INFORMATION
REGARDING CURRENCY EXCHANGE.  IN ADDITION
TO THE CONSUMER FEE APPLICABLE TO THIS
TRANSACTION, A CURRENCY EXCHANGE RATE WILL
BE APPLIED.  UNITED STATES CURRENCY IS
CONVERTED TO LOCAL CURRENCY AT AN EXCHANGE
RATE SET BY MONEYGRAM OR ITS AGENTS.  ANY
DIFFERENCE BETWEEN THE RATE GIVEN TO
CUSTOMERS AND THE RATE RECEIVED BY
MONEYGRAM OR ITS AGENTS WILL BE KEPT BY
MONEYGRAM OR ITS AGENTS IN ADDITION TO
THE CONSUMER FEE.  PLEASE ASK THE CLERK
FOR INFORMATION CONCERNING THE CURRENCY
EXCHANGE RATE APPLICABLE TO YOUR
TRANSACTION.  YOU MAY ALSO FIND OUT THE
CURRENT FOREIGN EXCHANGE RATE PROVIDED BY
MONEYGRAM TO ITS CUSTOMERS BY CALLING
TOLL FREE TO 1-800-926-9400.

## Cambio de Moneda

ADEMÁS DE LOS CARGOS CONSUMIDOR,
MONEYGRAM TAMBIÉN GANA DINERO CUANDO
CAMBIA SUS DÓLARES A PESOS U OTRA MONEDA
EXTRANJERA.  POR FAVOR LEA LA CARTA EN
ADJUNTO CON ESTE RECIBO PARA MÁS
INFORMACIÓN SOBRE EL TIPO DE CAMBIO.
ADEMÁS DE LAS CUOTAS AL CONSUMIDOR
ESTABLECIDAS PARA ESTA TRANSACCIÓN, SE
APLICARÁ UN TIPO DE CAMBIO DE MONEDA.
PARA LA CONVERSIÓN DE LA MONEDA DE LOS
ESTADOS UNIDOS A MONEDA LOCAL, SE APLICARÁ
EL TIPO DE CAMBIO DETERMINADO POR
MONEYGRAM O SUS AGENTES.  CUALQUIER
DIFERENCIA ENTRE EL TIPO DE CAMBIO
OFRECIDO A LOS CLIENTES Y EL TIPO DE
CAMBIO OBTENIDO POR MONEYGRAM O SUS
AGENTES, ADEMÁS DE LAS CUOTAS AL
CONSUMIDOR, CORRESPONDERÁ A MONEYGRAM O
SUS AGENTES.  POR FAVOR SOLICITE AL
EMPLEADO QUE LE ATIENDA INFORMACIÓN
RESPECTO AL TIPO DE CAMBIO DE MONEDA QUE
SE VA A APLICAR A SU TRANSACCIÓN.  USTED
TAMBIÉN PUEDE SOLICITAR INFORMACIÓN SOBRE
EL TIPO DE CAMBIO MONEDA EXTRANJERA ACTUAL
QUE ESTÁ OFRECIENDO MONEYGRAM A SUS
CLIENTES, LLAMANDO GRATUITAMENTE AL
1-800-955-7777.

plaintiff EXH #(25)

# GOOD FAITH ESTIMATE

PAGE (3)

| | |
|---|---|
| Applicant: SAMUEL R BYRD | Application No: BYRD CREDIT 2 |
| Property Addr: 1250 EAGLE BLUFF DRIVE, BOURBONNAIS, IL 60914 | Date Prepared: 07/14/2006 |
| Prepared By: First National Mortgage Sources  Ph. 816-876-2626 | Loan Program: Construction/Rehab |
| 1509 NE PARVIN ROAD, KANSAS CITY, MO  64116 | |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates-actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 settlement statement which you will be receiving at settlement. The HUD-1 settlement statement will show you the actual cost for items paid at settlement.

Total Loan Amount $   311,735   Interest Rate:   7.000 %   Term:   36 / 36  mths

| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN: | | | PFC S F POC |
|---|---|---|---|---|
| 801 | Loan Origination Fee | 1.000% | $  3,117.35 | |
| 802 | Loan Discount | | | |
| 803 | Appraisal Fee | | (350.00) | ✓ |
| 804 | Credit Report | | 50.00 | |
| 805 | Lender's Inspection Fee | | | |
| 808 | Mortgage Broker Fee | | | |
| 808 | Tax Related Service Fee | | | |
| 810 | Processing Fee | | 550.00 | |
| 811 | Underwriting Fee | | 50.00 | |
| 812 | Wire Transfer Fee | | 25.00 | |

| 1100 | TITLE CHARGES: | | | PFC S F POC |
|---|---|---|---|---|
| 1101 | Closing  or  Escrow  Fee: | | $  225.00 | |
| 1105 | Document Preparation Fee | | | |
| 1106 | Notary Fees | | | |
| 1107 | Attorney Fees | | | |
| 1108 | Title Insurance: | | 350.00 | |

| 1200 | GOVERNMENT RECORDING & TRANSFER CHARGES: | | | PFC S F POC |
|---|---|---|---|---|
| 1201 | Recording Fees: | | $  72.00 | |
| 1202 | City/County Tax/Stamps: | | | |
| 1203 | State Tax/Stamps: | | 170.00 | |

| 1300 | ADDITIONAL SETTLEMENT CHARGES: | | | PFC S F POC |
|---|---|---|---|---|
| 1302 | Pest Inspection | | $ | |

| | | | Estimated Closing Costs | 4,609.35 |
|---|---|---|---|---|

| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | | | PFC S F POC |
|---|---|---|---|---|
| 901 | Interest for | 5 | days @ $   60.6151   per day | $  303.08 | |
| 902 | Mortgage Insurance Premium | | | |
| 903 | Hazard Insurance Premium | | 1,749.96 | |
| 904 | | | | |
| 905 | VA Funding Fee | | | |

| 1000 | RESERVES DEPOSITED WITH LENDER: | | | PFC S F POC |
|---|---|---|---|---|
| 1001 | Hazard Insurance Premiums | 2 months @ $  145.83  per month | $  291.66 | |
| 1002 | Mortgage Ins. Premium Reserves | months @ $  per month | | |
| 1003 | School Tax | months @ $  per month | | |
| 1004 | Taxes and Assessment Reserves | 2 months @ $  350.00  per month | 700.00 | |
| 1005 | Flood Insurance Reserves | months @ $  per month | | |
| | | months @ $  per month | | |
| | | months @ $  per month | | |

| | | Estimated Prepaid Items/Reserves | 3,044.70 |
|---|---|---|---|

| TOTAL  ESTIMATED  SETTLEMENT  CHARGES | 7,654.05 |
|---|---|

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: | | | TOTAL ESTIMATED MONTHLY PAYMENT: | |
|---|---|---|---|---|
| Purchase Price/Payoff (+) | 311,735.00 | New First Mortgage(-) | Principal & Interest | 1,818.45 |
| Loan Amount (-) | 311,735.00 | Sub Financing(-) | Other Financing (P & I) | |
| Est. Closing Costs (+) | 4,609.35 | New 2nd Mtg Closing Costs(+) | Hazard Insurance | 145.83 |
| Est. Prepaid Items/Reserves (+) | 3,044.70 | | Real Estate Taxes | 350.00 |
| Amount Paid by Seller (-) | | | Mortgage Insurance | |
| | | | Homeowner Assn. Dues | |
| | | | Other | |
| Total Est. Funds needed to close | 7,654.05 | | Total Monthly Payment | 2,314.28 |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the lender will take a first lien on the property.    The undersigned acknowledges receipt of the booklet "Settlement Costs" and if applicable the Consumer Handbook on ARM Mortgages.

| Applicant   SAMUEL R BYRD | Date | Applicant | Date |
|---|---|---|---|

Calyx Form gfe2.frm 11/01

Plaintiffs
EXH # 86
Good FAITH Estimate.
From Defendants
Sellers and Brackney
Loan cancelled, Due
To actions of, Don
Demaroth, Sellers
(and) Brackney

| Form 3949 A (12-2005) | Department of the Treasury - Internal Revenue Service **Information Referral** *(See instructions on reverse)* | OMB # 1545-1960 |
|---|---|---|

**1. Taxpayer Name** DONALD DEMARAH

**a. Street Address** 48 N. WEST AVE

**b. City/State/ZIP** BOURBONNAIS, IL ~~NOT AVAILABLE~~ 60914 /See File ATCH

**c. Social Security Number (SSN)** NOT AVAILABLE / SEE FILE ON RECORD

**d. Occupation** CONTRACTOR/BUILDER

**e. Date of Birth** (1949 or 1950) SEPT. 16, 1949

**3. Marital Status**
☒ Married   ☐ Single   ☐ Head of Household
☐ Divorced   ☐ Separated

**2. Business Name** DON DEMARAH CONSTRUCTION  LICENSE # L-2002-069

**a. Street Address** 48 N. WEST AVE

**b. City/State/ZIP** BOURBONNAIS, IL 60914

**c. Employer Identification Number** NOT KNOWN (See FILE

**d. Principal Bus Activity** Building & Repairing houses, other structures, Landscaping

**3a. Name of Spouse** KATHY DEMARAH

**4. Alleged Violation of Income Tax Law (Check all that apply).**
☐ False Exemption   ☐ Unsubstantiated Income   ☒ Unreported Income SEE ATTACH   ☐ Failure to Withhold Tax
☒ False Deductions   ☐ Kickback   ☐ Narcotics Income   ☐ Wagering/Gambling
☐ Multiple Filing   ☒ False/Altered Documents   ☐ Public/Political Corruption   ☒ Earned Income Credit
☐ Organized Crime   ☐ Failure to Pay Tax   ☐ Failure to File Return   ☒ Other (Describe below)

**5. Unreported Income and Tax Years (Fill in Tax Years and dollar amount(s), if known, e.g., TY2005 $10,000)**
See 1099   WESTERN UNION   THIS CASH GIFTS VALUED AT
TY 2006 $46,700 CASH  TY2006 $3,490 MONEY ORDER  TY 2006 $50,000  TY____ $____  TY____ $____
CASH GIFTS WERE IN FORM OF CONCERT SPECIAL PASS

**a. Comments (Briefly describe the facts of the alleged violation - Who/What/Where/When/How. Attach another sheet, if needed).** DONALD DEMARAH, ENTERED INTO TWO, (2) SEPERATE TRANSACTIONS WITH, SAMUEL R. BYRD, JR., DURING THE YEAR 2006. ONE TRANSACTION WAS FOR, THE SALE OF A HOME, BUILT BY, DON DEMARAH CONSTRUCTION. THE SECOND WAS FOR THE INVESTMENT INTO THE CORPORATION OF SAMUEL R. BYRD, JR'S, MUSIC CONCERT BUSINESS, MILON MUSYCK, INC., LAS VEGAS, NV. TO MAKE A LONG STORY SHORT, DON DEMARAH, MADE FALSE ALLEGATIONS AND FALSE REPORT TO THE AUTHORITIES, AGAINST MY COMPANY, AND ME PERSONALLY. AFTER WE SETTLED OUR BUSINESS, DUE TO HIS, RECORDED PHONE THREATS, OCTOBER, NOV 2006, ON MY VOICE MAIL FOR HIS SHADY BUSINESS DEALINGS, IN CONSTRUCTION. HE ACCEPTED THE FULL AMOUNT OF $46,700 CASH PAYOFF AND, ASKED ME, NOT TO REPORT THE PAYMENT TO, THE IRS. I TOLD HIM TO, KISS MY ASS AND I'LL SEE HIM IN TAX COURT, FOR ATTEMPTING TO SOLICIT ME TO COMMIT, TAX FRAUD. (SEE ATTACHED

**b. Are books/records available?**
☐ Yes   ☐ No

**c. Do you consider the taxpayer dangerous?** CDs FORWARDED TO IRS - etc.
☒ Yes   ☐ No LEFT SEVERAL THREATENING VOICE MESSAGES, 2006

**d. Banks, Financial Institutions used by the taxpayer:**
Name: HOMESTAR BANK Acct# 3351810   Name: KANKAKEE CREDIT UNION ?
Address: 3 DIVERSATECH DRIVE   Address: ROUTE 50
City/State/ZIP: MANTENO, IL 60950   City/State/ZIP: KANKAKEE, IL 60915

**e. Please describe how you learned and/or obtained the information in this report (Attach another sheet, if needed):** See Color COPY PRODUCED to IRS/DEPT OF TREASURY IT 2005/MARCH 100CT / PERSON ABOVE, DONALD DEMARAH, ACCEPTED A $46,700 CASH PAYOUT FROM, MY PRODUCTION COMPANY, MILON MUSYCK, INC., ASKED ME TO HIDE THE, 1099 PAYROLL ADJUSTMENT TO THE INTERNAL REVENUE/DEPT OF THE TREASURY. I REFUSED. HE FILED FALSE ALLEGATIONS AGAINST ME SAYING, I DIDN'T HAVE A MUSIC CORP OR LICENSE NOR DID HE GET ANY MONEY. WELL, WE KNOW THAT IS NOT SO.

**6. Your Name:** SAMUEL R. BYRD, JR. OWNER/PRESIDENT OF MILON MUSYCK, INC. LAS VEGAS, NV 89101

**a. Address:** 1515 EAST TROPICANA, C/O J.J. O'SBORN - ROGERS & ROGERS

**b. City/State/ZIP:** LAS VEGAS, NV 89120   702-795-1040 Joseph O'Sborn - TAX ACCOUNTANT

**c. Telephone Number (Please include the Area Code):** See FILE FROM INVESTIGATORS IN OGDEN, UTAH
DEMARAH OWES $9,240 BALANCE TO, MY CORPORATION, MILON MUSYCK, INC. IN FEE's, etc.

For Paperwork Reduction Act, see Instructions

Samuel R. Byrd JR

Catalog Number 47872E    Form 3949 A (12-2005)

Plaintiffs Exh #27

4 SEE ATTACHED BANK RECORDS, AS PROOF FOR INSPECTED (AGENT

WITNESSED BY: Chrinowski 18907

4 BYRD, WILL TESTIFY, "IN FED COURT"

# 1SOURCE
### Real Estate & Financing

6342 SW 21st Street, Suite 101, Topeka, KS 66615

---

# FAX COVER

TO:  Lucy

FAX:  630-833-2270

FROM:  Jason Sellers

RE:  Sam Byrd Package

PAGES:  Too many to count  (INCLUDING THIS COVER SHEET)

COMMENT:  Lucy, here is everything that we have on Mr. Byrd and his file.  Anything else I can try to answer for you please let me know.  My numbers are:

Work – (785) 273-6500
Cell – (785) 608-4364

Anything else please let me know.

*PLAINTIFFS EXH# (28)*
*Letter From Defendants, Sellers, and*
*BrackneY, After Receiving Plaintiffs*
*$1500 money Graham For, Title/Home owners/*
*Mortgage Insurance.*

---

### Jason Sellers  Loan Officer
Phone: 785-273-6500  ·  Fax: 785-273-6510  ·  Email: Jason@1SourceTopeka.com  ·  Cell: 785-608-4364

Received Time Aug. 24.  10:06AM

*ATTN: CHRIS MEDINA"*

# MARIAH CAREY

## 2006 TOUR
### VIP TICKET REQUEST FORM
EMAIL COMPLETED FORM TO: MariahCarey@LiveNation.com

Referred By: **Milon Musyck, Inc.**
Name and Company

E-Mail:* **davila@litchfieldcavo.com**
* This will be used to confirm your order.
Orders w/ out an email address will not be processed.

Patron Name: **Danette Davila**

*MONday 8/14-06*

Phone:

Date: **8/14/06 10:41**

**Continental Airlines Arena 5 tickets**
**Jones Beach   9/3/06   4 tickets**

| Venue | Show Name | Show Date | Price | # of Tix | | |
|-------|-----------|-----------|-------|----------|---|---|
| | MARIAH CAREY | | | 3 | = | $0.00 |

* Orders are for individual events only. We require a separate request for each event.

Order Total | 3 | = | $0.00 |

* Charges will appear on your credit card statement as either the venue name or local promoter name

* Order total does not include service fees

| | |
|---|---|
| Payment Method | *COMPS |
| | * Comp request must be approved by Live Nation Touring |
| Name On Card: | |
| | Exp. Date:  05/2006 |
| CC #: | |
| | Security Code |
| | * 3 digit # following code on the back/ AMEX 4 digit # on front above cc# |

| | | | |
|---|---|---|---|
| Fed Ex | ○ | Account # | * A valid FedEx/ DHL account is required |
| DHL | ○ | | |
| Company Name: | | Service Type:  2nd Day | |
| Recipient Name: | | | |
| Address: | | Phone Number: | * Must match address given |
| City/ State/ Zip: | | | |
| Pickup/ Messgr. | ○ | * Should you choose the pick-up messenger option, pick-up information will be provided with your confirmation | |
| Will Call | ⊙ | Will Call Name: | |
| | | * Will Call pick-ups require picture ID that matches the name on the envelope | |

**Box Office Use Only**

| | | | |
|---|---|---|---|
| Date Received: | | Account#: | |
| Total Charge: | | Confirm #: | |
| Approved By: | | Seats: | |
| Notes: | | | |

EMAIL COMPLETED FORM TO: MariahCarey@LiveNation.com
TICKETS ARE SUBJECT TO AVAILABILITY AND APPROVAL.
TICKETS ARE NOT GUARANTEED UNTIL A CONFIRMATION HAS BEEN SENT TO THE REQUESTING PARTY.
*** Incomplete order forms will not be processed (i.e. no email address or referral name, etc.)
No upgrades, refunds or exchanges will be honored.

*Plaintiffs Exhibit # 29*

*Email from MARIAH CAREY, Regarding (9) Comp TKS to Plaintiffs Music Corp. Defendant DONALD Domoratt also received (10) Comp TKS., etc., Chicago's United Center, September 11, 2006.*

Aug. 24. 2006  9:53AM    1 Source real estate & finance    No. 0481    P. 1

**E-FILED**
Tuesday, 29 April 2008, 02:23:47 PM
Clerk, U.S. District Court, ILCD

**1 SOURCE**
Real Estate & Financing

6342 SW 21ˢᵗ Street, Suite 101, Topeka, KS 66615

# FAX COVER

TO:  Sam Byrd

FAX:  (815) 802-1885

FROM:  Jason Sellers

RE:  Info. I Sent off

PAGES:  2  (INCLUDING THIS COVER SHEET)

COMMENT:  Sam, struck out – sorry, she sent me back a copy of the states they are
licensed in. They are not a licensed lender in Illinois. So, can't do it with here. Have
sent the other stuff to Lucy this morning.

Jason Sellers  Loan Officer
Phone: 785-273-6500  ·  Fax: 785-273-6510  ·  Email: Jason@1SourceTopeka.com  ·  Cell: 785-608-4364

PLAINTIFF EXHIBIT (30) LETTER FROM DEFENDANT SELLERS, KNOWING THAT HE AND HIS
COMPANY, COMPANY OWNER, ALONG WITH, DEMARATT WERE, SCAMMING PLAINTIFF ALL
ALONG.



## SOURCE
Real Estate & Financing

5825 SW 29th, Suite 201, Topeka, Kansas 66614
(785) 273-6500 office - (785) 273-6510 fax

| | | Subject: | Credit pkg |
|---|---|---|---|
| Date: | 8/15/06 | Ref # | |
| To: | Sam | | |
| Fax #: | 815-802-1885 | | |
| From: | Dixie Norman | | |
| Fax #: | (785) 273-6510 | | |
| Pages: | 26  (ic) | | |

Sorry this took awhile things
just *real* busy.

PLAINTIFF EXH # 31 A — DIXIE NORMAN,
Letter From, SELLERS, ONE SOURCE, SHowing A different
address than, LETTER OF, AUGUST 24, 2006.



## Wholesale Lending

**Excellent Programs! Outstanding
Service! Great Rates!**

FIRST
CONSOLIDATED
MORTGAGE COMPANY

1700 Pacific Ave.
24th Floor
Dallas, TX 75201
Toll Free 877-969-3800
Fax 214-855-0420
wholesale@firstconsolidated.com

Home
About Us
Broker of the
Month
Broker
Approval,
Fraud Policy
FAQ
Frequent
Closers Club
Program
Information
Monthly
Specials
Matrix,
Rates, and
Guidelines
Employment
Opportunities
Sponsored
Sports
Hard Money
Lending
Made Easy
Real Estate
for Sale
Retail
Mortgage
Lending
Mortgage
Benefits
Corporation



EQUAL HOUSING
LENDER

# Frequently Asked Questions (FAQ) Shee

1. **Mortgagee clause:** First Consolidated Mortgage Company, It's successors and/or assigns, Pacific Ave., Suite 2400, Dallas, TX 75201. (title & insurance.)

2. **FCMC closes 1st liens in:** AL, AZ, AR, CO, CT, FL, GA, ID, IN, KS, KY, LA, MD, MI MS, MO, MT, NM, NC, OH, OK, OR, SC, TN, TX, UT, WI, WV & WY.

3. **FCMC closes combo 2nd liens in:** AL, AZ, CO, CT, FL, GA, KY, KS, LA, MD, MS, MI NM, NC, OK, OR, SC, TX, UT, WI & WV.

4. **Fees:** Underwriting (Commitment) $949, Doc Prep $50, Admin $350 & Flood Cert $8. 2n $300.

5. **Fee discounts:** Early Bird- File arrives after the 1st & closes by the 15th reduce fees $250. Speed Bonus- File closes within 5 business days of approval reduce fees $150. Discounts may be used in conjunction with each other for a total of $400. FCC Members take additional $750 off fees. Can be used in conjunction with all other discou C-CAP discounts may also be used in conjunction with all other discounts.

6. **Average Underwriting Time:** 6-12 hours. FCC Members 3 hours.

7. **Average Turn Time:** From pre-qual to funding is 96 hours. Quick Closings in as little as 8 h

8. **Same Day Closings:** FCMC will E-mail Docs to closing attorneys or title companies only, brokers. There is a $25 E-mail fee. We do not do fax closings. There is a 10:00 CST cut same day fundings.

9. **Appraisal Review Process:** The Appraisal Review Process is performed by an FCMC unde whom pools information from a variety of sources. These sources often contain information f third parties. FCMC does not divulge which parties provided what information as part of this process. In every instance someone locally is hired to go by the subject. The review process c anywhere from $350 -$500 and is charged back to the borrower. In some instances, where FC believes the value to be inflated, FCMC will require this process to be paid for up front by eit broker or borrower. This is a non-refundable fee and must be paid for with money order or ca check. We don't encourage this.

10. **Approved Appraisers:** FCMC does not require you to use any specific appraiser. The app you choose should be state licensed, do good work and not have any outstanding issues with lenders.

11. **Credit Reports:** FCMC uses the broker's credit report for all pre-quals. Upon submission of file FCMC will pull it's own tri-merged "in-file". File will be underwritten using the cre scores generated from "in-file". If the broker uses Credco or Land America FCMC will u broker's credit report and have it reissued into FCMC's name as long as it is not out of date. other cases a broker's credit report may not be used.

12. **Credit Updates:** If a file calls for updating and you do not provide us with the nec documentation the borrower will be charged a fee. If multiple credit reports are pulled in or facilitate a loan the borrower will also be charged.

13. **Minimum Loan Amount:** $50,000. Titanium & Platinum Minimum is $70,000. Second l $20,000

14. **Maximum Loan Amount:** Loans to $1,000,000. Check for specific program limitations.

15. **Prohibited Properties:** Single-wides, double-wides, triple-wides, row homes, mixe properties, farms & ranches, berm homes & unique properties.

16. **Prohibited borrowers:** Non-permanent resident aliens, and non-occupying co- borrowers not allowed. Builders refinancing a construction loan.

PLAINTIFFS'
EXHIBIT #
31 B



# BENNETT COMMERCIAL LLC

29 Heritage Drive, Bourbonnais, IL 60914 • office 815.929.9381 • fax 815.929.0727
100 Marquette Place South, Manteno, IL 60950 • office 815.468.6760 • fax 815.468.6787

## FAX COVER SHEET

DATE: 7/20/06

TO: Jason Sullus

YOUR FAX NUMBER: 785-273-6510

FROM: SHELLY FRANCO

NUMBER OF PAGES INCLUDING COVER SHEET: 6

COMMENTS:

Jason-This is the contract for
Sam Byrd.
         I need to know how soon
we can close he wants to close
ASAP!

IF THERE ARE ANY QUESTIONS, PLEASE CONTACT ME.

$63,735.⁰⁰

THANKS,

Shelly Franco

SHELLY
CELL PHONE: 815-482-0876

PLAINTIFFS EXH# 39
SELF EXPLANATORY ON PLAINTIFFS
INTENT TO BUY FROM DEFENDANT DEMORATH

www.BennettCommercial.com

RECEIVED
AT STANDARD
TITLE CORP.
KANKAKEE, ILLINOIS

MONDAY

September 18, 2006

**RE:**    **1250 Eagle Bluff Drive (Lot 87 Virginia Grove Fourth Addition)**
    **1230 Eagle Bluff Drive (Lot 86 Virginia Grove Fourth Addition)**
    **Bourbonnais, IL  60914**

Purchaser agrees that seller's obligation to convey the property subject of these transactions (Lots 86 & 87) is contingent on receipt by Standard Title Guaranty Company of monies sufficient to fund the subject purchase on or before October 2, 2006.

Agreed and accepted by:

_____
Seller - Donald Demarah

_____
Purchaser - Byrd Family Revocable Living Trust

PLAINTIFFS EXH #33
Defendant DEMARAH BREACHED
CONTRACT ON HOME, AND CONCERT
INVESTMENT.

**Standard Title Guaranty Company**
215 S. Schuyler Avenue
P.O. Box 86
Kankakee, IL 60901-0086
(815)933-5100  Fax (815) 933-8617

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 7/27/2006 | 70840 |

**BILL TO**

Bennett Commercial
29 Heritage Drive
Bourbonnais, IL  60914

PROPERTY ADDRESS

Lot 87
Virginia Grove 4th
Bourbonnais
Requested by Shelly Franco

| ACCT. NO. | TERMS | U/W | TYPE | REFERENCE | ORDER NUMBER |
|-----------|-------|-----|------|-----------|--------------|
|  | SETTLEMENT | LT | TITLE | Byrd | ST 42312 |

| ITEM CODE | DESCRIPTION | POLICY AMT | PRICE |
|-----------|-------------|------------|-------|
| OP | Owners Policy (Seller) | 248 000 | 375.00 |
| ARF | IL Title Ins. Agent Reg. Fee |  | 3.00 |
| SMP | Mtg. Pol./Later Date/Pol. Iss. (Buyer) |  | 120.00 |
| ARF | IL Title Ins. Agent Reg. Fee |  | 3.00 |
| LWE | Lien Waiver Exam |  | 100.00 |

| | **Total** | **$601.00** |
|--|-----------|-------------|

(PLAINTIFFS EXH #33-42
PLAINTIFF PROOF OF, TITLE/HOME OWNERS/MORTGAGE INS, AND
LOAN IN PLACE AT TIME OF CONTRACT, WITH MAIN FRIDAY
DEFENDANT)

# COMMITMENT FOR TITLE INSURANCE

## Lawyers Title Insurance Corporation

### Schedule A

1. Effective Date: July 24, 2006 at 8:00 a.m.                    Commitment No. ST42312

2. Policy or policies to be issued:

    (a) ALTA Owner's Policy 1992                    Amount $248,000.00
        Proposed Insured:

        Byrd Family Trust

    (b) ALTA Loan Policy 1992                    Amount $TO COME
        Proposed Insured:

        OneSource

3. Title to the fee simple estate or interest in the land described or referred to in this Commitment is at the effective date hereof vested in:

    HomeStar Bank, as Trustee under provisions of Trust Agreement dated March 2, 2005 and known as Trust #1173

4. The land referred to in this Commitment is described as follows:

    Lot 87, Virginia Grove Fourth Addition, being a Subdivision of part of the Northwest Quarter of Section 18, Township 31 North, Range 12 East of the Third Principal Meridian, in Kankakee County, Illinois.

Standard Title Guaranty Company
215 South Schuyler Avenue,
Kankakee, IL 60901
(815) 933-5100

By: *Greg Gibson*
       Authorized Officer of Agent

This commitment is invalid unless the insuring provisions and Schedules A and B are attached.

PLAINTIFFS
EXH #34

## COMMITMENT FOR TITLE INSURANCE

### Lawyers Title Insurance Corporation

### Schedule B - Part I
(Requirements)

Commitment No. <u>ST42312</u>

The following are the requirements to be complied with:

1.  Pay the agreed amounts for the interest in the land and/or mortgage to be insured.

2.  Documents satisfactory to us creating the interest in the land and/or mortgage to be insured must be signed, delivered and recorded:

    a.  Proper Deed from HomeStar Bank, as Trustee under provisions of Trust Agreement dated March 2, 2005 and known as Trust #1173 vesting fee simple title in Byrd Family Trust.

    b.  Mortgage from Byrd Family Trust to OneSource securing the mortgage amount.

3.  You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

4.  Payment and release of record of construction mortgage from HomeStar Bank, as Trustee under provisions of Trust Agreement dated March 2, 2005 and known as Trust #1173 to HomeStar Bank dated August 9, 2005, recorded August 10, 2005 as document #2005-17293 to secure $166,600.00.

5.  Completion and execution of the ALTA EXTENDED COVERAGE POLICY STATEMENT by all parties to the transaction. (ATTACHED)

6.  Receipt of satisfactory affidavits from the owner and general contractor, if any, evidencing completion of the improvements and payment of all bills incurred in the erection thereof, if the statutory period for filing mechanics' and materialmen's liens has not expired. Proper waivers or releases of liens must be obtained from the holders of any unsatisfied claims disclosed by said affidavits. These exhibits should be provided for examination prior to final settlement, and this commitment is subject to the sufficiency thereof.

This commitment is invalid unless the insuring provisions and Schedules A and B are attached.

Standard Title Guaranty Company, 215 South Schuyler Avenue, Kankakee, IL 60901



# COMMITMENT FOR TITLE INSURANCE

## Lawyers Title Insurance Corporation

### Schedule B - Part II
(Exceptions)

Commitment No. ST42312

Schedule B of the policy or policies to be issued will contain the exceptions to the following matters unless the same are disposed of to the satisfaction of the Company.

1. Defects, liens, encumbrances, adverse claims, or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2. Encroachments, overlaps, boundary disputes, shortage in area, or any other matters which would be disclosed by an accurate survey and inspection of the premises.

3. Rights or claims of parties in possession not shown by the public records.

4. Easements or claims of easements not shown by the public records.

5. Any lien, or right to a lien for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

6. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public record. Proceedings by a public agency which may result in taxes or assessments, or notice of such proceedings, whether or not shown by the records of such agency or the public record.

7. NOTE: The records of the Supervisor of Assessments indicate that the premises in question is currently being assessed for real estate taxes under tax #17-09-18-102-087.

8. Taxes for 2005 and subsequent years.

9. NOTE: 2005 taxes are $909.54. The first installment was paid on June 26, 2006. The second installment is not yet paid.

10. Rights of the public, State of Illinois, and the municipality in and to that part of the property in question taken or used for road purposes together with utility rights therein.

11. Rights of way for drainage ditches, feeders and laterals, if any.

12. 25 foot Building Setback Line along the West line of property as shown on plat of subdivision.

13. 12 foot Sanitary Sewer Easement over the West line of property as shown on plat of subdivision.

14. 22 foot Public Utility Easement over the East line of property as shown on plat of subdivision.

**Continued**

This commitment is invalid unless the insuring provisions and Schedules A and B are attached.

Standard Title Guaranty Company, 215 South Schuyler Avenue, Kankakee, IL 60901

PLAINTIFF'S EXHIBIT # (36)

## SCHEDULE B-Part II - continued

Commitment No. __ST42312__

15. A perpetual easement on the Plat of Virginia Grove Subdivision- Phase 3 and the plat of survey of Virginia Grove Fourth Addition is hereby granted to the Village of Bourbonnais, Municipal Corporation of Illinois, its successors and assigns, for the full and free right and authority to install, construct, and otherwise establish, relocate, remove, renew, replace, operate, inspect and maintain water mains, fire hydrants valves and water service facilities, sanitary sewer pipes, manholes and sewer connections, storm sewer pipes, manholes, inlets, storm water detention and storm water services connections, electronic transmission and distribution wires and cables, community antenna television systems and such other appurtenances and facilities as may be necessary or conveniently related to said water mains, sanitary sewer pipes, storm sewer pipes, storm water detention, electronic transmission and distribution wires and cables, community antenna television system, in, on, upon, over, through, across, and under all of that real estate hereon described and designated as within public utility and drainage easements, said easements being designated by the dash lines and designations of width.

16. Declaration of Protective Covenants for Virginia Grove Subdivision recorded February 5, 2003 as document #2003-02860, including, but not limited to the following; single family residence, residential purposes only; type, size and kind of construction; plan approval; no dog runs or outside kennels; no trailer; mobile home or recreational vehicle shall be parked on property, or in an adjacent public street for more than 3 weeks.  When any such vehicle is parked it shall be parked only in a driveway; fence restrictions; all driveways to be constructed of concrete; no noxious or offensive trade; no animals, reptiles, insects or birds of any kind shall be raised, bred or kept on property except for ordinary household pets provided they are not kept, bred or maintained for commercial purposes; no outside laundry or drying of clothes except in fenced area not to be visible to other homeowners; installation of hardwood trees and children playground equipment restrictions; establishes Homeowners Association; Covenants to run with the land.  (See record for particulars)

17. Virginia Grove Creation of Association, Administration, Membership and Voting Rights in the Association recorded December 22, 2003 as document #2003-32523.

18. Assignment of Rents from HomeStar Bank, as Trustee under provisions of Trust Agreement dated March 2, 2005 and known as Trust #1173 to HomeStar Bank dated August 9, 2005 recorded August 10, 2005 as document #2005-17294.

19. Terms, powers, conditions and limitations contained in and imposed by Trust Agreement under which Trustee holds title to the premises in question.

The following endorsements have been approved for the mortgage policy, when issued:  Environmental Protection Lien Endorsement and Alta-9 Endorsement.

NOTE:  For information purposes, a copy of this commitment has been sent to the following parties:  Sam Byrd, Bennett Commercial/ Shelly Franco, OneSource/ Jason Sellers, and Bennett Commercial/ Chip Chappell.

NOTE:  PLEASE DIRECT INQUIRIES REGARDING THIS TITLE COMMITMENT TO:  Greg Gibson, (815) 933-5100.

jc



E-FILED
Tuesday, 29 April, 2008  02:23:33 PM
Clerk, U.S. District Court, ILCD

## Standard Title Guaranty Company

ALTA EXTENDED COVERAGE POLICY STATEMENT
FOR RESIDENTIAL ONE TO FOUR UNIT BUILDING

Date:                                                                    Commitment No. **ST42312**

The undersigned hereby certify with reference to the premises described in the above numbered commitment:

1. The address of the property is: **1250 Eagle Bluff Dr  Bourbonnais, IL  60914**
2. That to the best knowledge and belief of the undersigned:

    a.    The property is improved with a residential building containing 4 or less units which is more than 6 months old.

    b.    Within the past six months there have been no improvements, repairs, or remodeling done to the property, and no contracts for any such work have been given or exist that have not been fully performed and satisfied.

    c.    The proceeds of the buyer's mortgage is not to be used to finance the making of future improvements or repairs on the land except:

    d.    The seller or buyer is the only occupant of the property except:

    e.    There is not existing survey of the property, OR

    f.    If a survey of the property exists, A COPY IS ATTACHED TO THIS STATEMENT.  The attached survey is an accurate and complete representation of the property and the improvements made to the property since the date of the attached survey, except:

    g.    There are no walkways or driveways located on the property that are used in common by adjoining owners except:

    h.    That the improvements (house, garage, outbuildings, etc.) on the property, are within the boundary lines and setback lines, if any, of said property, and that there are no encroachments (fences, walkways, driveways, eaves, drains, etc.) by improvements on adjoining property onto subject property, and that we know of no assertion being made by any adjoining property owner nor by us against them as to the location of boundary lines or disputes as to occupancy of any portion of our property or their property except:

The undersigned makes the above statements for the purpose of inducing Standard Title Guaranty Company to issue its underwriter's extended coverage policy pursuant to the referenced commitment.

Seller(s)                                                                 Purchaser(s)

_____ (Seal)       _____ (Seal)
HomeStar Bank Trust #1173                                  Byrd Family Trust

_____ (Seal)       _____ (Seal)

LENDER'S DISBURSEMENT STATEMENT:  The undersigned hereby certifies that the proceeds of the loan secured by the mortgage to be insured pursuant to the above commitment were fully disbursed on the          day of                          ,                          and to the best knowledge and belief of the undersigned, the proceeds are not to be used to finance the making of future improvements or repairs on the land.

LENDER: _____       Dated: _____

By:_____

SMS  Vision Form SSTFA01  Rev. 06/15/98

PLAINTIFFS
EXH #        (38)

# COMMITMENT FOR TITLE INSURANCE

## Lawyers Title Insurance Corporation

### Schedule A

1.  Effective Date: July 31, 2006 at 8:00 a.m.

    Commitment No. ST42312

2.  Policy or policies to be issued:

    (a) ALTA Owner's Policy 1992
        Proposed Insured:

        Amount $307,000.00

        Byrd Family Revocable Living Trust Agreement

    (b) ALTA Loan Policy 1992
        Proposed Insured:

        **REVISED**
        8-3-06

        Amount $TO COME

        First National Mortgage Services

3.  Title to the fee simple estate or interest in the land described or referred to in this Commitment is at the effective date hereof vested in:

    HomeStar Bank, as Trustee under provisions of Trust Agreement dated March 2, 2005 and known as Trust #1173 as to Tract I
    Don Demarah as to Tract II

4.  The land referred to in this Commitment is described as follows:

    Tract I: Lot 87, Virginia Grove Fourth Addition, being a Subdivision of part of the Northwest Quarter of Section 18, Township 31 North, Range 12 East of the Third Principal Meridian, in Kankakee County, Illinois.

    ~~Tract II: Lot 86, Virginia Grove Fourth Addition, being a Subdivision of part of the Northwest Quarter of Section 18, Township 31 North, Range 12 East of the Third Principal Meridian, in Kankakee County, Illinois.~~

Standard Title Guaranty Company
215 South Schuyler Avenue,
Kankakee, IL 60901
(815) 933-5100

By: _____
       Authorized Officer of Agent

TUESDAY

This commitment is invalid unless the insuring provisions and Schedules A and B are attached.

Received  Time Aug. 4. @2006  12:27PM No. 0041 5 935 0624                     95%                    P.02

PLAINTIFF'S
EXH #    #39

# COMMITMENT FOR TITLE INSURANCE

## Lawyers Title Insurance Corporation

### Schedule B - Part I
(Requirements)

Commitment No. ST42312

The following are the requirements to be complied with:

1. Pay the agreed amounts for the interest in the land and/or mortgage to be insured.

2. Documents satisfactory to us creating the interest in the land and/or mortgage to be insured must be signed, delivered and recorded:

   a. Proper Deed from HomeStar Bank, as Trustee under provisions of Trust Agreement dated March 2, 2005 and known as Trust #1173 vesting fee simple title in Byrd Family Revocable Living Trust Agreement.

   b. Warranty Deed from Don Demerah and spouse if any vesting fee simple title in Byrd Family Revocable Living Trust Agreement.

   c. Mortgage from Byrd Family Revocable Living Trust Agreement to First National Mortgage Services securing the mortgage amount.

3. You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

4. Payment and release of record of construction mortgage from HomeStar Bank, as Trustee under provisions of Trust Agreement dated March 2, 2005 and known as Trust #1173 to HomeStar Bank dated August 9, 2005, recorded August 10, 2005 as document #2005-17293 to secure $166,600.00. (Tract I)

5. Completion and execution of the ALTA EXTENDED COVERAGE POLICY STATEMENT by all parties to the transaction. (ATTACHED)

6. Receipt of satisfactory affidavits from the owner and general contractor, if any, evidencing completion of the improvements and payment of all bills incurred in the erection thereof, if the statutory period for filing mechanics' and materialmen's liens has not expired. Proper waivers or releases of liens must be obtained from the holders of any unsatisfied claims disclosed by said affidavits. These exhibits should be provided for examination prior to final settlement, and this commitment is subject to the sufficiency thereof.

This commitment is invalid unless the insuring provisions and Schedules A and B are attached.

Standard Title Guaranty Company, 215 South Schuyler Avenue, Kankakee, IL 60901

TUESDAY

AUG-04-2006  12:06    815 935 0624

PLAINTIFF'S EXHIBIT # (40)

# COMMITMENT FOR TITLE INSURANCE

### Lawyers Title Insurance Corporation

#### Schedule B – Part II
(Exceptions)

Commitment No. ST42312

Schedule B of the policy or policies to be issued will contain the exceptions to the following matters unless the same are disposed of to the satisfaction of the Company.

1. Defects, liens, encumbrances, adverse claims, or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2. Encroachments, overlaps, boundary disputes, shortage in area, or any other matters which would be disclosed by an accurate survey and inspection of the premises.

3. Rights or claims of parties in possession not shown by the public records.

4. Easements or claims of easements not shown by the public records.

5. Any lien, or right to a lien for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

6. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public record. Proceedings by a public agency which may result in taxes or assessments, or notice of such proceedings, whether or not shown by the records of such agency or the public record.

7. NOTE: The records of the Supervisor of Assessments indicate that the Tract I is currently being assessed for real estate taxes under tax #17-09-18-102-087.

   NOTE: The records of the Supervisor of Assessments indicate that Tract II is currently being assessed for real estate taxes under tax #17-09-18-102-086.

8. Taxes for 2005 and subsequent years.

9. NOTE: 2005 taxes are $909.54. The first installment was paid on June 26, 2006. The second installment is not yet paid. (#17-09-18-102-087)

   NOTE: 2005 taxes are $11.48. The first installment was paid on June 26, 2006. The second installment is not yet paid. (#17-09-18-102-086)

10. Rights of the public, State of Illinois, and the municipality in and to that part of the property in question taken or used for road purposes together with utility rights therein.

11. Rights of way for drainage ditches, feeders and laterals, if any.

continued

This commitment is invalid unless the insuring provisions and Schedules A and B are attached.

Standard Title Guaranty Company, 215 South Schuyler Avenue, Kankakee, IL  60901

TUESDAY

Received Time Aug. 4. 2006 12:27PM No. 0041    5 935 0624                    95%                    P.04



## SCHEDULE B-Part II - continued

Commitment No. ST42312

12. 25 foot Building Setback Line along the West line of property as shown on plat of subdivision. (Lot 87)

13. 12 foot Sanitary Sewer Easement over the West line of property as shown on plat of subdivision. (Lot 87)

14. 22 foot Public Utility Easement over the East line of property as shown on plat of subdivision. (Lot 87)

15. 25 foot Building Setback Line along the West line of property as shown on plat of subdivision. (Lot 86)

16. 12 foot Sanitary Sewer Easement over the West line of property as shown on plat of subdivision. (Lot 86)

17. 6 foot Public Utility Easement over the South line of property as shown on plat of subdivision. (Lot 86)

18. 22 foot Public Utility Easement over the East line of property as shown on plat of subdivision. (Lot 86)

19. A perpetual easement on the Plat of Virginia Grove Subdivision- Phase 3 and the plat of survey of Virginia Grove Fourth Addition is hereby granted to the Village of Bourbonnais, Municipal Corporation of Illinois, its successors and assigns, for the full and free right and authority to install, construct, and otherwise establish, relocate, remove, renew, replace, operate, inspect and maintain water mains, fire hydrants valves and water service facilities, sanitary sewer pipes, manholes and sewer connections, storm sewer pipes, manholes, inlets, storm water detention and storm water services connections, electronic transmission and distribution wires and cables, community antenna television systems and such other appurtenances and facilities as may be necessary or conveniently related to said water mains, sanitary sewer pipes, storm sewer pipes, storm water detention, electronic transmission and distribution wires and cables, community antenna television system, in, on, upon, over, through, across, and under all of that real estate hereon described and designated as within public utility and drainage easements, said easements being designated by the dash lines and designations of width.

20. Declaration of Protective Covenants for Virginia Grove Subdivision recorded February 5, 2003 as document #2003-02860, including, but not limited to the following; single family residence, residential purposes only; type, size and kind of construction; plan approval; no dog runs or outside kennels; no trailer; mobile home or recreational vehicle shall be parked on property, or in an adjacent public street for more than 3 weeks. When any such vehicle is parked it shall be parked only in a driveway; fence restrictions: all driveways to be constructed of concrete; no noxious or offensive trade; no animals, reptiles, insects or birds of any kind shall be raised, bred or kept on property except for ordinary household pets provided they are not kept, bred or maintained for commercial purposes; no outside laundry or drying of clothes except in fenced area not to be visible to other homeowners; installation of hardwood trees and children playground equipment restrictions; establishes Homeowners Association; Covenants to run with the land. (See record for particulars)

21. Virginia Grove Creation of Association, Administration, Membership and Voting Rights in the Association recorded December 22, 2003 as document #2003-32523.

22. Assignment of Rents from HomeStar Bank, as Trustee under provisions of Trust Agreement dated March 2, 2005 and known as Trust #1173 to HomeStar Bank dated August 9, 2005 recorded August 10, 2005 as document #2005-17294. (Tract I)

23. Terms, powers, conditions and limitations contained in and imposed by Trust Agreement under which Trustee holds title to the premises in question.

The following endorsements have been approved for the mortgage policy, when issued: Environmental Protection Lien Endorsement and Alta-9 Endorsement.

NOTE: For information purposes, a copy of this commitment has been sent to the following parties: Sam Byrd; Bennett Commercial, Shelly Franco and Chip Chappall; OneSource, Jason Sellers, First National Mortgage Services, Mark; and Attorney Paula Jacovi.

NOTE: PLEASE DIRECT INQUIRIES REGARDING THIS TITLE COMMITMENT TO: Greg Gibson, (815) 933-5100.

